## Case No. 10,763.

### PARKMAN v. BOWDOIN et al.

[1 Summ. 359.] [1]

Circuit Court, D. Massachusetts.   May Term, 1833.

#### CONSTRUCTION OF DEVISE—FEE TAIL.

A devise to A for life, and after her death to her second son B, and to his lawful begotten children in fee simple for ever; but in case he should die without children lawfully begotten, to the other son of A, (C,) and to his lawfully begotten children in fee simple for ever. At the time of making the will, B had no children. *Held*, that B took a fee tail, with remainder to C, on an indefinite failure of issue of B.

[Cited in Davidson v. Koehler, 76 Ind. 410; Slade v. Patten. 68 Me. 384; Wheatland v. Dodge. 10 Metc. 504. 505; Re Paton. 111 N. Y. 485. 18 N. E. 626; Bowker v. Bowker, 148 Mass. 203, 19 N. E. 215; Prowitt v. Rodman. 37 N. Y. 57. Cited in brief in Sutton v. Miles, 10 R. I. 349.]

[This was an action at law by George Parkman against James Bowdoin and another.]

Covenant, for a breach of the covenants of a deed, dated the first day of March, 1833, conveying certain real estate in Boston. Among other covenants the defendants covenanted, that the said James Bowdoin (one of the grantors) was seised and possessed of the premises in fee tail, was of full age, and was duly entitled by law to give, grant, sell, and convey the same in fee simple to the plaintiff, &c., &c. The breach alleged was, that the said James Bowdoin was not so seised, &c., &c. The plea averred, that the said James Bowdoin was seised and possessed of the premises in fee tail, was of full age, and was duly entitled by law to give, grant, sell, and convey the premises in fee simple, &c., &c.; on which issue was joined. At the trial the jury found a special verdict.

1 [Reported by Charles Sumner, Esq.]

Charles P. Curtis, for plaintiff.
Jeremiah Mason, for defendants.

STORY, Circuit Justice. The sole question arising under the special verdict is, whether James Bowdoin, the grantor, was at the time of the conveyance seised in fee tail of the estate in controversy. If so, then, under the statute of Massachusetts, of the 8th of March, 1792 (Act 1791, c. 61), as he was of full age, he was capable of passing a fee simple to the grantee, there being nothing to impeach the bona fides of the deed of conveyance. See Lithgow v. Kavenagh, 9 Mass. 161. The question, whether he was so seised in fee tail, turns altogether upon the true interpretation of the will of Mrs. Sarah Bowdoin, made on the 18th of July, 1812, which has been duly proved and approved by the proper court of probate. I pass over all consideration of her subsequent marriage with the late General Dearborn, and the trust deeds and settlements executed upon that occasion; because it is admitted that they do not change the legal posture of the case, the will being expressly upheld by them. The clause in the will, on which the case turns, is in the following words: "Eighthly. I give and devise to my beloved, affectionate, worthy niece, Mrs. Sarah Bowdoin Sullivan, wife of George Sullivan, Esq., of said Boston, for and during the term of her natural life, all my real estate in Milk street, in said Boston, with the house, stables, coach-house, and all the other buildings, and all the lands thereunto belonging, which I at present possess, agreeable to the last will of my late worthy husband; and at her death I give the said estate to her second son, James Bowdoin Sullivan, he dropping the name of Sullivan, and taking and retaining the name of Bowdoin, and to his lawful begotten children in fee simple for ever. But in case he should die without children lawfully begotten, I hereby give the estate to the oldest son of the said Sarah B. Sullivan, now named George Richard Sullivan, on condition of his dropping the name of Sullivan, and taking and retaining the name of George Richard James Bowdoin, and to his lawful begotten children in fee simple for ever. But in case of the death of the above named James Bowdoin Sullivan and George Richard Sullivan, without lawful begotten children, the said estate shall be a younger son's of the said Sarah Bowdoin Sullivan, on condition of his taking and retaining the name of James Bowdoin, and to his lawful begotten children in fee simple for ever. And in case of the failure of all such sons of the said Sarah Bowdoin Sullivan, and they dying without lawful begotten children, it shall be her oldest daughter's, or in case of the death of her oldest daughter without children, it shall be her second daughter's and so on to her youngest, and to her children in fee simple for ever."

Now, the special verdict finds, that Mrs. Sarah Bowdoin, the testatrix, died in 1826,

seised of the premises for her natural life; that the devisees, James Bowdoin Sullivan and George Richard Sullivan, (the grantors of the plaintiff,) have changed their names in conformity to the will; that they came of full age, namely, the said George on the 14th of November, 1830, and the said James on the 16th of March, 1832; and that Mrs. Sarah Bowdoin Sullivan, the devisee, and her husband, George Sullivan, on the 29th of December, 1832, duly conveyed her life estate in the premises to their son, the devisee, James Bowdoin. The effect of these facts is, that by the union of the life estate with the remainder under the will, if that remainder gave a fee tail, the devisee, James, was, at the time of the conveyance to the plaintiff, tenant in tail in possession, for it is found, that he had a seisin and possession of the premises according to his title. It may be well to add, what is apparent upon the face of the special verdict, that James and George, the devisees, at the time of the making of the will, were without issue, being then of very tender years. The devise, then, stripped of unnecessary appendages, is a devise in remainder to James, (tne grantor,) and to his lawfully begotten children in fee simple for ever. But in case he should die without children lawfully begotten, then to George, (the grantor,) and his lawfully begotten children in fee simple for ever. And in case of the death of both, without lawfully begotten children, then to a younger son of Mrs. Sarah B. Sullivan, and his lawfully begotten children in fee simple for ever; and in case of the failure of all sons, then to the daughters successively, &c., &c.

The argument for the plaintiff is, that, taking all the clauses together, the intent of the testatrix was, that the devisee, James, should take a remainder in fee simple, with an executory devise over to the devisee, George, in fee simple, in the event of the failure of issue of James. But the argument is surrounded with this difficulty, that, if it can be maintained, it may defeat the very intention which it is supposed to support. If the executory devise over is to be on an indefinite failure of the issue, then it is too remote, and therefore void. If it is to be limited to a failure in the life-time of James, then if James should leave issue, who should die without issue, the remainder over to George would wholly fail; for the event would not have occurred, upon which it was to go over. See Bayley, J., Tenny v. Agar, 12 East, 253, 261; Doe v. Webber, 1 Barn. & Ald. 713, 720. It is plain, then, that if the testatrix intended, as I think she did intend, to create successive estates in the children of Mrs. Sarah B. Sullivan upon the total failure of the line in the elder branches, the construction contended for would or might, upon either supposition, defeat it. And I am of opinion, that this construction would directly defeat it; for upon principle, as well as authority, the words, "if he should die without children,"

ought to be construed an indefinite failure of issue, for want of suitable words limiting the failure to any other period; and, as I shall presently show, issue and children are in this devise precise equivalents. So that the executory devise over would be utterly void for remoteness.

On the other hand, if we construe the estate in James to be an estate tail, and, in default of his issue, successive estates tail in the other children, according to priority of birth and sex, the manifest object of the testatrix in keeping the estate in the family, so long as there are any descendants, may, by the rules of law, be accomplished. Why, then, should we not give this construction to the terms of the will? Certainly we ought so to do, if there be nothing repugnant to the just sense of the terms used, and it will further the intention of the testatrix; for in all cases of wills, the intention is to govern, if not inconsistent with the rules of law.

Let us, then, examine the terms of the devise. It is to James and to his lawfully begotten children in fee simple for ever. Now, it is plain, that as James had no children at the time, they could not take immediately by way of descriptio personarum, as joint tenants with their father, a fee simple; and therefore we are driven to construe the word "children" as words of limitation, and not as words of purchase. And this is in conformity to the rule laid down in Wild's Case. 6 Coke, 17, which has been constantly recognised as law down to our day.[2] "And this difference" (says Lord Coke) "was resolved for good law, that if A devises his lands to B and his children or issues, and he hath not any issue at the time of the devise, that the same is an estate tail; for the intent of the testator is manifest and certain, that his children or issues should take; and as immediate devisees they cannot take, because they are not in rerum natura; and by way of remainder they cannot take, for that was not his intent, for the gift is immediate; therefore these such words shall be taken as words of limitation, scilicet, as much as children or issues of his body." The only distinction between the case thus put, and that now at bar, is, that here the estate to James and his children is in remainder, after a life estate to his mother. But that makes no difference in law, because it is still an immediate estate to the children in the remainder, as much as to their father, James, and not a remainder subsequent to his estate in the premises. So that the reasoning in Wild's Case is strictly applicable, as will ap-

[2] Wild's Case is always referred to with approbation. See Buffar v. Bradford, 2 Atk. 220; White v. White, Willes, 348; Wharton v. Gresham, 2 W. Bl. 1083; Cook v. Cook, 2 Vern. 545; Oates v. Jackson, 7 Mod. 439; King v. Melling, 1 Vent. 231; Hughes v. Sayer, 1 P. Wms. 534; Davie v. Stevens, 1 Doug. 321; Hodges v. Middleton, 2 Doug. 430; Seale v. Barter, 2 Bos. & P. 485; Broadhurst v. Morris, 2 Barn. & Adol. 1.

pear upon the next resolution in the same case: "But it was resolved, that if a man, as in the case at bar, devises land to husband and wife, and after their decease to their children, or the remainder to their children; in this case, although they have not any child at the time, yet any child, which they shall have after, may take by way of remainder, according to the rule of law; for his intent appears, that their children should not take immediately, but after the decease of R and his wife." Wild's Case, 6 Coke, 17. Indeed, Wild's Case itself presented the very point, if there had been any distinction between the case of a devise of an immediate estate in possession and such a case in remainder; for, there, the question arose upon a devise in remainder, after an estate to the testator's wife for life. And this last resolution puts the case expressly on the ground, that the children were to take after the decease of their parents, and not immediately with them. See Moore, 397; Seale v. Barter, 2 Bos. & P. 492, 493. And according to the opinion of Lord Alvanley, in Seale v. Barter, 2 Bos. & P. 493, who cites also the report in Moore, 397, all the judges thought, that if there were no children in esse at the date of the will, it would have been an estate tail. Lord Chief Justice Willes, in delivering the judgment of the court in Ginger v. White, Willes, 348, 353, pointedly affirms the same doctrine. See, also, King v. Melling, 1 Vent. 229, 231.

Now, it cannot be pretended, that James's children were, under the present devise, to take the estate solely in remainder after his decease, which could only be by a devise to him for life, and to the children after his decease in fee; whereas the devise is to him and his children in fee simple. And if the word "children" is to be construed as words of purchase, and not of limitation, he must take a fee simple jointly with them. And this is doubtless the ground, upon which Oates v. Jackson, 2 Strange, 1172, was decided. There, the devise was "to my wife A for her life, and after her death to her daughter, and her children on her body begotten or to be begotten by N her husband and their heirs for ever." At the time of making the will, J had one daughter, and afterwards had two sons and one daughter, who died without issue; and J survived her oldest daughter, who left issue. It was held, that J took a fee, as joint tenant, she having a child at the making of the will; and, as she survived all her children, the whole fee vested in her. And the court relied upon the doctrine stated in Co. Litt. 9: "B having eleven sons and daughters, A giveth lands to B et liberis suis et a lour heires, and father and all his children do take a fee simple jointly by force of the words, 'their heirs.' But if he had no child at the time of the feoffment, the child born afterwards shall not take." That the court rely for their decision upon the fact of J having a child at the time, is very

clear from the more full and accurate report of the same case in 7 Mod. 439, (Leach's Ed.)

The case of Annable v. Patch, 3 Pick. 360, turned substantially upon the same considerations; for in that case there were several children born at the time of making the will. In neither case, either in the argument or the decision, was an allusion made to any supposed distinction between an immediate estate in possession and such an estate in remainder. The case of Buffar v. Bradford, 2 Atk. 220, was a case of personal estate, and turned upon that consideration; for if the parent in that case was held to take an estate tail, under a bequest to herself and the children born of her body, the parent would take the whole to the exclusion of the children. And as the intent seemed clear, that the children should take, though there were no children born at the time of making the will, the court construed the words to be words of purchase, and not words of limitation. In a devise of real estate, there is no such necessity to construe the words as words of purchase; for the children may take under the estate tail. It is well known, that there are great distinctions, in all this class of cases, between bequests of personalty and devises of real estate. This very case states it: and it is recognised in Cook v. Cook, 2 Vern. 545; Forth v. Chapman, 1 P. Wms. 663; Dingley v. Dingley, 5 Mass. 535, 537, and in many other cases. See, also, Doe v. Perryn, 3 Term R. 484, 494; Crooke v. De Vandes, 9 Ves. 197; Hawley v. Northampton, 8 Mass. 3, 38, 39. But there is no necessity, in the present case, of relying upon the doctrine in the foregoing cases; because, here, there is a devise over, (which did not exist in any of them,) which has always been held to have a most material bearing upon the construction of the antecedent clause, in making the words thereof words of limitation, and not of purchase. The devise is, "in case he (James) should die without children lawfully begotten," then the estate is to go over to George, and his children in fee simple. Now, this is utterly inconsistent with the notion of a fee in the children of James. For, suppose James should have children, and they should all die in his life-time, leaving issue, the estate would then, if construed to depend upon the contingency of leaving children at his death, pass over to George, thus entirely defeating the prior estate to the children of James, although they left issue. Yet no one can reasonably doubt, that the testatrix intended the devise over to take effect only upon an extinction of the issue of James; for she has added the words, "in fee simple," after children.

To give any just effect, then, to the original devise, as well as to the devise over, the word "children" must be construed, as meaning issue or heirs of the body. And, although in its primary sense, the word "children" is a descriptio personarum, who are to take, there is not the slightest difficulty in giving

it the other sense, when the structure of the devise requires it. There are many authorities to this effect in cases analogous to the present. In Hughes v. Sayer, 1 P. Wms. 534, the master of the rolls said, that the word "children," when unborn, had been in case of a will construed to be synonymous with "issue," and therefore would in a will create an estate tail. In Davie v. Stevens, 1 Doug. 321, the devise was of the fee simple and inheritance to W. S., to him and his child or children for ever; and if he happened to die before twenty-one years of age, then devise over. Lord Mansfield, in delivering the opinion of the court, said: "The words, 'child' or 'children,' are to the full as restrictive, as if the testator had said, 'and if my son die without heirs of his body.' To give the father a fee, would be to strike these words out of the will. They must operate to give an estate tail, for there were no children, born at the time, to take an immediate estate by purchase. The meaning is the same, as if the expression had been, 'to A and his heirs,' that is to say, his children or his issue." Ginger v. White, Willes, 348, Hodges v. Middleton, 2 Doug. 431, and Doe v. Perryn, 3 Term R. 484, point in the same direction. In this last case, Mr. Justice Buller said, "children" and "issue," in their natural sense, have the same meaning. In Wood v. Baron, 1 East, 259, the devise was to the testator's wife for life, and after her death to her daughter A, as a place of inheritance to her and her children or her issue for ever. And if she should die, leaving no child or children, then devise over. At the time of making the will, the daughter had a child. The court nevertheless held, that the daughter took an estate tail; and Lord Kenyon said, that if the words were construed to give the daughter a fee simple, the devise over, as an executory devise, would be too remote, being after an indefinite failure of issue. In Seale v. Barter, 2 Bos. & P. 485, the devise was to the testator's son A, and his children lawfully begotten; and for default of said issue to his daughter B, and her children lawfully to be begotten; and for default of such issue, to his son and daughter equally between them. At the time of this will, the son had no child, and his daughter was unmarried. The court held that the son took an estate tail; and the reasoning of Lord Alvanley, in giving the opinion of the court, is very cogent in its application to the present case. In Broadhurst v. Morris, 2 Barn. & Adol. 1, the devise was to his daughter A for life; and at her decease to her husband for life; and at his decease, to his grandson W and his children lawfully begotten for ever; but in default of such issue, at his decease to his grandson A, his heirs and assigns for ever. The court held, that W took an estate tail. This case is nearly identical with the present in its leading features.

There is a very late case, which is stronger than the present. It was a devise to trustees of all the testator's real estate, to permit his daughter to take the rents and profits, or to sell, &c., if occasion required; also to settle on any husband she might take, for life, should he survive her. But should she have a child, to the use of such child from and after his daughter's decease. Should none of these cases happen, after his daughter's decease devise over. It was held, that the daughter took an estate tail, the daughter having no child at the making of the will and the testator's death. And Bifield's Case, cited in 1 Vent. 231, was relied on, where "son" was held to be nomen collectivum, as "child" was here. Doe v. Davies, Mich. T. K. B. 1832; 4 Barn. & Adol. 43, 1 Law J. K. B. (1832) 244. See, also, Sonday's Case, 9 Coke, 127. It is plain, then, that upon authority there is no difficulty in the present case, in construing the word "children" to be a word of limitation, and not of purchase, if the sense of the devise requires it. And in reason it must be so also; for the intention of the party, when discovered, must in a will control any technical sense of particular words; since the intention, if legal, is universally admitted to govern. The strong ground, upon which the word "children" has been construed to be a word of limitation, when there is a devise over on failure of children, is, that otherwise, if there should be children born, who should die during the life-time of the parent, leaving issue, the latter would not take. This consideration has been always held decisive; and it strictly applies to the present case. Wyld v. Lewis, 1 Atk. 432; Doe v. Perryn, 3 Term R. 484; King v. Burchall, 4 Term R. 296, note; Tenny v. Agar, 12 East, 253, 261; and Doe v. Webber, 1 Barn. & Ald. 713, 720,—are in point. See, also, Hawley v. Northampton, 8 Mass. 3, 41.

The superadded words, "in fee simple," in the original devise, so far from impugning, absolutely require this construction. They demonstrate, that the devise over is not to take effect, while there are any issue of James in esse. "In fee simple" means the same as to their heirs and assigns; and the devise over being to a collateral heir, these words are necessarily cut down to heirs of the body, if the devise over is to take effect only upon an indefinite failure of issue; and that it is so, is established by all the authorities. The universal rule is, that a failure of children, issue, or heirs of the body, means an indefinite failure of issue, unless there are other qualifying words, limiting the contingency to the death of the parent, which there certainly are not here. See Denn v. Shenton, Cowp. 410; Ide v. Ide, 5 Mass. 500; Lillibridge v. Adie [Case No. 8,350]. The will, therefore, read according to the real meaning of the terms, is, to James and the heirs of his body lawfully begotten, and their heirs for ever; and if he should die without such heirs of his body, then devise over. This is precisely the devise in Denn v. Shenton, Cowp.

410, where the devise was held a fee tail, with a remainder to the second devisee. Under this aspect of the case, there is this additional reason for construing the devise to James a fee tail, that otherwise a devise over, (as has been already said,) being upon an indefinite failure of issue, would be utterly void for remoteness. Indeed, the argument at the bar surrenders the case, if the contingency is not to be limited to the decease of James. Not a single case has been cited at the bar, in which under similar circumstances a devise has been held to be upon such a limited contingency. Richardson v. Noyes, 2 Mass. R. 56. is distinguishable, (if indeed that case can be supported as law,) for there were words giving the estate to the survivor, &c., which were thought to indicate, that the devise over was to take effect at the death of A, without any children then living. In Doe v. Webber, 1 Barn. & Ald. 713, the devise was to the testatrix's niece A, her heirs, executors, administrators, and assigns for ever; which would clearly pass a fee simple to her. And the devise over was, in case A shall die, and leave no child or children, then to her niece B, to her and her heirs for ever, paying £1000 unto the executor of her niece A, or to such person as she by her last will shall direct. The court held, that the devise over did not cut down the fee to a fee tail; but upon the whole language, the words, "child" or "children," were to be construed issue; and it was an executory devise over, upon A's dying without leaving any issue at her death. The court laid great stress on the legacy of £1000 being paid in a proximate and not in a remote event. In that case, also, there were no such words, as "children," interposed in the first devise, as there are in the present. Porter v. Bradley, 3 Term R. 143, turned upon the peculiar force of the words, "leaving no issue behind him." So that in the present case there is an evident necessity of construing the words "children," &c., to mean issue or heirs of the body. If so, they are words of limitation, and not of purchase; and the estate of James is a fee tail, and not a fee simple. For this construction several reasons may be given. First, because the children were not in esse at the time of making the will; and therefore they could not take an immediate estate. Secondly, because otherwise, if children were born, and died in the life-time of James, leaving issue, they would be excluded: whereas the words, "fee simple," show, that an interest was intended to the issue. Thirdly, because if "children" in the devise were to be construed to mean, not the whole class of issue, but strictly children of James. descriptione personarum. living at his death, then the devise over would be defeated, if James should die leaving children, who should afterwards die without issue, which plainly could not have been intended. Fourthly, because if the devise over be, as in my judgment it is, upon an indefinite failure of issue, then, as an executory

devise, it is too remote and void; but as a remainder after a fee tail, it is good. And I would add, that it is a clear rule of law, that every limitation is to be construed to take effect by way of remainder, if it may, and not by way of executory devise, unless it be unavoidable to carry the intention into effect. My judgment is, that the words and the intent of the testatrix manifestly require the estate in James to be construed a fee tail, with a remainder to George. It is a case as free from doubt, on this point, as the will of an unskilful person well could be. See Lees v. Mosley, 1 Younge & C. Exch. 589, 606 to 609.

The consequence is, that. upon the special verdict, judgment must pass for the defendants.