Ruffin, C. J.
 

 Strictly speaking, it was incumbent on the plaintiffs to offer proof on the hearing to establish the number and names of the children of Elizabeth Fielder and of the issue of the deceased son John. But, as the object of all the parties is to obtain a construction of the will, the defendant made no objection on that ground, and therefore there may be an enquiry on that point.
 

 Several questions were raised as to the construction of the will. The first is, whether the children of Elizabeth Fielder take as a class, or
 
 per capita.
 
 The opinion of the Court is very decidedly, that under both clauses they represent their mother, and take as a unit, as between them and the other donees. It is true, as a general rule, that “equally to be divided” imports that each of the persons, among whom the division is to be made, is to take the same share, and consequently they take separately as individuals within the description. But that does not hold, when there is sufficient in the context to show clearly, that the children of Elizabeth, for example, were the objects of the testator’s bounty, as her children, and were in truth donees in her place ; for it is manifest the intention was, that they should come in as a family. The reason assigned here for giving the negroes to the daughter’s children, instead of the daughter herself, shews the testator’s purpose to have been to deal equally between his children or their families, and makes the case like that of
 
 Martin
 
 v.
 
 Gould,
 
 2 Dev. Eq. 305. The same intention is evinced by the direction in the residuary clause, “Elizabeth’s children to have their mother’s part
 
 *441
 
 of the surplus and by that in the previous clause, that the division was to be equal, “with W'hat they have had heretofore.” That last circumstance brings this case within that of
 
 Spivey
 
 v.
 
 Spivey,
 
 2 Ire. Eq. 100 ; in which it was held, that a direction to include in the fund advancements to the mother imported that the children took as a unit.
 

 Another question is, what effect the death of John before his father had upon the gifts to him. Were it not ior the Act of 1816, his share of the residue, that is, one fifth, would have lapsed, and gone necessarily to the next of kin.
 
 Johnson
 
 v.
 
 Johnson,
 
 3 Ire. Eq. 426. By force of that act, however, the bequest took effect and vested in the son’s issue. But it cannot give the issue a share of the.slaves under the clause, which disposes of them specificalty. The act does not operate, as if the names of the issue were inserted in the will instead of that of the testator’s child ; but it transfers to the issue the thing given to the child, to be held by the issue in the same manner and to the same extent as it would have vested in the child, if living at the testator’s death. Then this gift, which is for the child’s own life, necessarily expired upon his death, and there is nothing to which the issue could succeed under that clause ; but that share falls of course into the residue.
 

 There are further enquiries, who are entitled to the residue, and when the different parts of it are to be devided. It is to be observed in the first place, that the will disposes of the thirteen slaves for the lives only of the several takers. Therefore, besides the residue derived from other parts of the estate after payment of debts and charges, the share of John in the thirteen slaves, to wit, one third, forms part of it; and there is no reason, why to that extent the division of the residue should not take place immediately. It is to be made into five equal shares, one for the widow and each of the two surviving sons,
 
 *442
 
 one for the issue of John and one for the Fielders. The reversion of the other two thirds of the slaves, after the deaths of the son Thomas and the children of Mrs. Fielder, also forms part of the residue ; and, as those persons shall respectively die, the slaves, which each held, will be divisible as parts of the residue into five shares, as before, for the residuary legatees or their representatives. The bill is filed upon the idea, that the children of the son John succeed to his share. It may be, that they do, as there may be no grandchildren or other issue of that person. But all his issue, living at the death of the testator, took equal and transmissible interests ; for, the act does not transfer the bequest to the children of the child,. butsays expressly that the title shall “vest” in the “issue.” and. as it does not specify in what proporlions the several persons, constituting the issue, shall take, all those, who answer the description at the testator’s death, take equally. Of course the shares of any of the issue dying afterwards will go to their representatives. The consequence is, that if John Henderson had grand-children, they come in equally with his living- children, though the parent of such grand children be one
 
 of the
 
 children. That is the sense of the term “issue” even in a will, and when unexplained, it includes all offspring or descendants; and they take as joint tenants, and, of course, equally.
 
 Davenport
 
 v.
 
 Hanbury, 3 Ves. 257. Bernard
 
 v. Montague, 1 Mer.
 
 424
 
 and 436. Much more must it be received in that signification, when used iti a statute without qualification, as is the case here ; for the act has no reference to the statute of distribution or the canons of descent, or anything else that can restrain the natural and most extensive sense of that term.
 

 It does not appear that there is any change in the children of Mrs. Fielder since the making of the will; and therefore no question may arise, whether any child of hers is or is not to be excluded. Supposing the parties,,
 
 *443
 
 however, to desire a declaration of their rights to be made as definitely as possible, the Court deems it proper to express the opinion entertained by us, that only those of her children, who were
 
 in esse
 
 at the death of the tes» tutor, take under either of the bequests- If any died be* fore and left issue, such issue cannot take. Not, under the act of 1816, because that is confined to gifts to a child of the testator, and does not include one to a grand child, so as, upon the death of the grand child, to vest the thing in the grand child’s issue. Nor could the issue come in under the description oí Elizabeth’s children in the will; for that does not include grand-children, except under very particular circumstances, which are not suggested here. Then, the general rule is, that when the division is not postponed in the will, but the shares of each are ascertainable at the death of the testator, only those can take under a gift to children of a particular person, who werein being when the will tookeffect. This Court might decree an immediate sale, although some of the parties be infants. But that is not the case, as Mr. Henderson, the son Albert, and the issue of the deceased son John, have no interest but in the reversion, as a part of the residue, and their rights ought not to be prejudged for the sake of promoting the convenience or interest of the other claimants.
 

 It is lastly to be considered, what species of advancements are to be accounted ior, and in reference to' what parts of the estate they are to be taken into the account. The provision upon the subject of the previous gifts is found in the specific disposition of the slaves to the sons, Thomas and John, and the Fielders ; and it seems plainly to mean by the term, “ what,” such slave or slaves as they had received from the testator. In the division of those slaves he intended things
 
 ejusdem generis
 
 to’ be brought in by the several donees in determining their respective shares. For that reason, and also because the
 
 *444
 
 residuary clause is, in its terms, a simple disposition of the residue equally among certain persons without any qualification but the single one, that some of those persons are to take one share as a class, the provision concerning the advancement does not apply to the residue at all, but only to the division of the slaves among the -tenants for life. Of course the son Thomas must bring in.his advancements. The children of Mrs. Fielder must bring in those to her. It is not suggested, that the testator, had made a prior gift to the children or either of them, but he had to her. Besides, in furtherance of the equality he intended between his children, as they take in her stead, it is to be inferred, he intended they should take as he would have required the mother to do. It is equally necessary to include the advancement to the deceased soil John ; not, indeed, to assign a share to him or his family, but in order to ascertain what goes into the residuum for division presently, as his share. For it is to be recollected, that the will does not give to eacli a third of the-thirteen negroes, but a third with what they before had respectively; then, the slaves on hand and those previously given constitute the fund, and each one gets a ■share of that fund
 
 minus
 
 his advancement. That is what John would have got, had he lived; and, although the previous gifts .to him cannot be taken back, yet they must be now estimated in order to find what proportion of the thirteen negroes would
 
 have gone to him,
 
 and, that failing, goes into the residue. In estimating the different parts — it .not appearing that either of the advancements was- for the life of the child — we suppose the testator must have meant the value of the slaves out and out to be set on them, but that, in those left by him, the legatees should in the first instance have only an estate for life, while in the others their interest was absolute.
 

 Per Curiam.
 

 Declared accordingly.-