Nash, C. J.
The bill is filed by an executor to procure from the Court a construction of the will of Taney Holman.
We shall take up the items of the will in the order in which they were so lucidly arranged by the counsel of the plaintiff
The 6th and 7th items of the will are so connected by the facts, that it is necessary to consider them together. We do not entirely concur in the view taken by the plaintiff’s counsel as to these items. The authorities cited by him, to wit, Adams’ Eq. 172; Yates v. Cole and others, 1 Jones’ Eq. 110, *383 sustain bis argument, that the names of Thornton and Archer cannot be transferred from the respective items in which they are used, each to the other. There is, upon the face of this will no ambiguity; but there is an ambiguity arising out of extrinsic facts, and therefore, parol evidence is allowed to explain it. Taney Holman, the testator, had, some years before the making of his will, given by parol to his son Thornton Holman, the negro woman Lucy and her four children, Missouri, Jinny, Norman, and Cicero; and to his son Archer, he had given, in the same way, the negro woman Sylvia and her four children, Calvin, Bill, Alfred and Joshua. In his will he just reversed them, bequeathing to Thornton the ne-groes formerly given to Archer, and to the latter the negroes formerly given to Thornton. When these facts are known, (and they are admitted,) it is at once manifest, that a mistake was committed in the names of the respective legatees, or in the names of the negroes, as given by the will. No reason has been assigned, nor can we imagine one, for this change of names in the will. If the will is to receive a literal construction, Thornton loses the slaves originally given to him, and gets nothing by bequest, for begets nothing by the 12th. and 13th items of the will; the proceeds of the sale of the slaves therein mentioned, being given specially to other legatees. Now, it is evident, it was not the intention of the testator thus to exclude Thornton from all interest in his estate, and we think there is enough on the face of the bequests to Thornton and Archer, to show that it was the intention of the testator to confirm to them his previous gifts. It is a general rule, that where the name or description of a legatee is erroneous, and there is reasonable doubt as to the person intended to be named or described, the mistake will not disappoint the bequest. The error may be rectified, and the true intent ascertained in two ways : 1st, by the context; and in some cases, by parol testimony; thus, an error in the name of the legatee, may be obviated by the accessary of his description; as where a legacy is given “ to my name-sake Thomas, second son of my brother,” and the brother had no son-named “ Tho *384 mas,” but bis second son is named 'William, tlie latter will take. Williams on Ex’rs. 736. In the construction of a will, the Court may enquire into every material fact relating to the person claiming an interest under the will. Both the 6th and 7th items close in the same way, by a reference to previous gifts of slaves both to Thornton and Archer. It is true, that in grammatical construction, a relative is always applied to the next antecedent., and in these bequests the relative “that,” according to the rule, would apply to the negroes Henry and Jordan; but the Court, to carry out the obvious intentions of a testator, will, where necessary, disregard the technical rules of grammar, and give the relative a more distant antecedent Williams on Ex’rs. 715. In this case, we consider the relative as referring, not only to the negroes Henry and Jordan, but to the previous provisions of the item as coupled with the slaves previously mentioned. This construction is the true one. Apply this principle to the bequests in question; the slaves are designated by two descriptions; one, the names of tlie slaves; the other, an act of notoriety performed by the testator some time before, to wit, the previous gifts. We have seen, that if a legatee receives in a will two descriptions, the one, most certainly and accurately designating the individual, will govern the construction. So, in the subject of the bequests. In this case, the subjects of the bequests are designated in two ways. Which shall we take as most indicative of the testator’s intention ? The one, certainly, the least liable to mistake. The testator might have forgotten which family of negroes he had given to Thornton, and which to Archer, but he could not have forgotten the facts of the previous gifts. We consider the previous gifts, as facts much more to be relied on than the names of the negroes; and that in the 6th item, it was the intention of the testator, to confirm the previous gifts made to Thornton and Archer; and that the former is entitled to hold, under the will, the slaves Lucy and her four children, Missouri, Jinny, Norman and Cicero. The bill states, that Archer Holman carried the negroes, given by the previous gift to him, to Mis *385 sissippi, and there sold them, and died before the testator. The bequest to him is a satisfaction of the previous gift.
Mrs. Carter does not take a life-estate in Nancy, the offspring of Mary. She was born after the making of the will, and before the death of the testator. Tire word increase, is not coupled with fatvwe, she, therefore, did not pass to Mrs. Carter with her mother and the other children, but is included in the 13th item, and is to be sold. Cole v. Cole, 1 Ire. Rep. 460; Joiner v. Joiner, 2 Jones’ Eq. 68. Nor did she pass to the children of Mrs. Carter under the terms “ bodily heirs.” The rule in Shelly’s case has no application. Allen v. Pass, 4 Dev. and Bat. 77.
The 10th clause directs certain slaves, whose names are mentioned, “to be hired out in that neighborhood, until the youngest child of the testator’s daughter Elizabeth Eussell, arrives at age; and the hires in the mean time, as received by the executor, to be forwarded to the clerk’s office of Lauder-dale county, Alabama, and by the county court of said county, to be distributed equally between all the children of the said Elizabeth Eussell, &c.” Mrs. Eussell and her children, we presume, lived in Lauderdale county, Alabama, and the distribution is to be made there. There are in Alabama no county courts, but they have, what is called a probate court, discharging some of the functions of our Courts of Pleas and Quarter Sessions; they have the appointment of guardians to infants, and a general superintendence over their estates. To this Court tiren, it is the duty of the executor to remit the hires of these negroes, and in so doing, he may pay the hires to a duly appointed agent of the court of probate, or' may employ an agent of his own for that purpose.
The 13th item embraces the proceeds of the sale of the personal property, already made, to wit, $805, the proceeds of the sale of Harriot and her child Cina, the proceeds of the sale of Nancy and all the choses in possession not otherwise disposed of. This clause does not embrace tiro bonds, notes and open accounts, and money on hand at the time of the testator’s death, for the reason that the testator directs a sale of *386 the property embraced in it. Tliey must be distributed under the statute of distributions, as they are not disposed of by the will. Pippin v. Ellison, 12 Ire. Rep. 61.
The children of Elizabeth Russell, Sarah Carter and Cath-arine King, tsk&per stvrpes and not per capita, / that is, the children of each of the sisters take the place of their parent. Davidson v. Dallas, 14 Ves. Rep. 576, 2 Fearne 92; Hill v. Spruill, 4 Ire. Eq. 244.
Finally, the executor may distribute among the children as soon as he pleases, and need not wait for the deaths of their mothers. They have no interest in the matter.
The executor has asked our direction as to his assent to the legacies. An unqualified assent by an executor to a bequest for life, vests the title in remainder. Where, however, there are outstanding debts or trusts to be performed by the executor, he has a right to give a special, and not a general, assent, and ought, in the latter case, to insist that an inventory of the property be filed by the life-tenant, and also take a bond, with sureties, for the forth-coming of the property when the life-estate falls in. Iredell’s Ex’r. 257; Saunders v. Gatlin, 1 Dev. and Bat. Eq. 86; Cheshire v. Cheshire, 2 Dev. and Bat. Rep. 254.
Per Curiam. Declare accordingly.