## LEE v. BAIRD.

(Filed June 6, 1903.)

1. WILLS—*Construction*—" *Children.*"

Where a testator bequeathes certain property to V. for her life and at her death to be sold and divided equally among all of the children of the testator, grand-children whose parents were dead at the time of the execution of the will, take nothing under this provision.

2. WILLS—*Construction*—"*Heirs.*"

Where a will provides that certain property shall be sold and the proceeds divided amongst the heirs of the testator, grand-children of the testator take *per stirpes.*

3. WILLS—*Construction*—*Advancements*—"*Heirs.*"

Where a will provides that the heirs of the testator shall account for advancements, grand-children need not account for advancements made to their parents, as they take as purchasers and not as distributees.

ACTION by J. B. Lee and others against J. R. Baird and others, heard by Judge *W. B. Councill,* at September Term, 1902, of the Superior Court of BUNCOMBE County.

Mrs. Eliza T. Baird, late of the County of Buncombe, widow, on the 23rd of January, 1884, executed her last will and testament. The portions thereof material to the decision of this case are:

Item 2. I bequeath unto my daughter, Vickie Baird, all my household and kitchen furniture, to be hers forever, and I bequeath to Vickie during her life time my Forest Hill property; and at her death to be sold and divided equally among all of my children.

Item 4. The balance of the Marr Swamp place to be sold to pay my son Joseph the expenses of the law suit on Sec. 9, and if the amount received is more than enough to pay the expenses of the law suit, the remainder to be divided among all my children.

Item 5.   I request my executors to sell my lots in Asheville and my interest in the Craggy Mountain land and divide the money among all my heirs.

Item 7.   I request my executors to require of my heirs who have received advancements during the life of my husband or myself to present to them an itemized statement of such advancements before they shall receive any payment of the property directed to be sold in my will; and if any of my heirs have received no advancements, to pay to them a sum sufficient to make them all equal, and if any remainder to divide the amount amongst all of my heirs.   And if any of my heirs die before my death, leaving heirs, the children of such deceased parent or parents, shall receive jointly the share coming to their parent or parents,—the share he or they would have received if he or they had been living at the date of my death.

At the date of the execution of said will Mrs. Baird had seven living children.   A daughter, Mrs. M. J. Lee, died October 5th, 1878, leaving, surviving, six children.   The testatrix had, when she made said will, numerous other grandchildren, children of living children.   Victoria A. Baird, mentioned in Item 2 of the will, died March 20th, 1897, leaving no children.   At the date of said will T. J. Lee, the husband of M. J. Lee and father of said children, was and yet is a man of fine business ability, prosperous and wealthy, who provided well for his children.   His wife had received from the testatrix large sums by way of advancements exceeding in all $3,000 and amounting to more than the advancements which were made by the testatrix to any of her other children prior to her death.   The testatrix knew these facts at the time of making her will and when she died.   She was a woman of education and financial capacity and in full possession of her faculties. From a judgment for the plaintiffs, the defendants appealed.

---

*Merrimon & Merrimon,* for the plaintiffs.
*T. H. Cobb* and *F. A. Sondly,* for the defendants.

CONNOR, J. (After stating case.)   This action is brought
by the plaintiffs, five of the six children of Mrs. M. J. Lee,
against the executors, and children of Mrs. Baird for the
purpose of having the said will construed for and an account
of the proceeds of the property directed to be sold, and other
relief.   His Honor, upon the facts found as above stated,
adjudged that the property mentioned in the second item,
to-wit: the Forest Hill property; and that mentioned in
items 4 and 5 of said will, became and was by the provisions
of said will converted into personal property upon the death
of the said testatrix and was to be distributed as such by the
executors named in the will in accordance with the provisions
of the seventh item of the will.   That by the provisions of the
seventh item it became the duty of the executors to require all
of the heirs of the testatrix, by whom in said item and said
will, is meant those who would be entitled to the proceeds of
the sales of the said real property under the statute of distribu-
tions of the State of North Carolina, to render an account of
advancements and that the said plaintiffs are entitled to
receive from the proceeds of the said real property so much as
would come to them or each of them upon the basis of a per
capita distribution.   From this judgment the deféndants ap-
pealed.
   Plaintiffs contend, First:   That the real property directed
to be sold was converted into personalty by the provisions
of the will.   Second: That the word "children" in the will
includes the plaintiffs, who are grand-children.   Third:
That the word "heirs" is to be construed in the same way.
The defendants, on the contrary, contend that the words "all
of my children" exclude the plaintiffs from any participation
in the proceeds of the Forest Hill property, and that the word
"heirs", as used in the other items of the will, shall be con-

strued to mean children, thereby excluding the plaintiffs from any share in the property mentioned in Item 5.

In our efforts to adopt a construction of the will of Mrs. Baird, consistent with the rules laid down by the courts to guide them in such cases, we have encountered many and almost insurmountable difficulties.   Either construction suggested by counsel for the respective parties, while supported by well considered arguments and briefs, presents contradictions and leads to results difficult to reconcile with parts of the will.   We have given the case anxious and careful consideration.   The conclusion to which we have finally arrived is not free from difficulty and much could be said in support of one or more other views.

The first question presented is what meaning we shall attach, or we shall assume that the testatrix attached to the word "children" as used in the second and fifth items of her will. The first proposition laid down by Sir James Wigram in his Rules for The Interpretation of Wills is:   "A testator is always presumed to use the words in which he expresses himself according to their strict and primary acceptation, unless from the context of the will it appears that he has used them in a different sense, in which case the sense in which he thus appears to have used them will be the sense in which they are to be construed."   Lord Cranworth in *Hicks v. Sallitt,* 3 De G. M. and Gor., 782; 18 Jar., 915, says: "Where a testator uses a word which has a well known ordinary acceptation it must appear very certain that he has stated on the face of the will that he uses it in another sense before the ordinary sense can be interfered with.   In order to alter the meaning of a word it must appear not that the testator *might* have meant it in a different sense but that he *must* have meant it in a different sense, and this can only be shown by pointing some inconsistency in different parts of the will, or a positive statement of such being the sense intended, or a *reductio ad*

LEE *v.* BAIRD.

*absurdum* by not taking the word in a qualified sense." It is also an elementary rule "that every possible effort should be made by the court to reconcile the clauses seemingly repugnant and to give effect to the whole will; for the presumption is that the testator meant something by every sentence and word in his will, and no court is justified in rejecting any portion of it until it is positively assured that the portion which it rejects cannot be reconciled with the general intention of the testator as expressed in some other portion of the will, and even when the general rule of repugnancy is applied of necessity and the latter of the two inconsistent clauses is permitted to prevail over the former, it is a settled rule that the earlier of the two clauses will not be disturbed or rejected any further than is absolutely necessary to carry out the presumed intention of the testator as shown in the whole clause." Underhill on Wills, Sec. 359.

Certainly the use of the words "All of my children" by the testatrix is free from ambiguity and the uniform current of authority in this and other courts sustains the proposition that they will not be construed to include grandchildren unless from necessity, which occurs when the will would be inoperative unless the sense of the word "children" were extended beyond its natural import and when the testator has clearly shown by other words that he did not use the term "children" in the ordinary actual meaning of the word but in a more extensive sense; that this construction can only arise from a clear intention or necessary implication, as where there are no children but are grand-children, or where the term children is further explained by a limitation over in default of issue. This court in *Denny v. Closse,* 39 N. C., 102, says: "The intention of the testator is the governing rule in the construction of wills upon the principle that the law accords to every man the right to dispose of his property after his death as he shall please. If therefore his intention

can be ascertained from the will and it contravenes no rule of law, that intention shall be carried into effect. It sometimes becomes very difficult to ascertain what is the true meaning of the will; and the courts have been compelled to adopt various rules as indicating the will of the testator, which in such cases will be observed. . . . . It is manifest that the testator well understood the meaning of the words he used and that he varied them as occasion required to meet his wishes in .the disposition of his property. The objects of his bounty were his own children and he had a legal right to dispose of his property as he desired. We have examined the authorities to which our attention has been directed; there is nothing in them to change the view we have taken of the case. They only provide that the word 'children' may, under peculiar circumstances, mean grand-children, as when the meaning of the testator is uncertain and the bequest must fail unless such construction be given. That is not the case here." Ruffin, C. J., in *Ward v. Sutton,* 40 N. C., 421, says: "Every word is to be retained and a sensible meaning put on it if possible so as to effectuate the apparent intent, and, if it be necessary to the sense, words and even sentences may be transposed. . . . . The gifts being to children, the general rule is that where there are persons who answer that description grand-children cannot take under it." Battle, J., in *Mordecai v. Boylan,* 59 N. C., 366, says: "The testator clearly shows by his will that he understood the distinction between children and grand-children. The general rule therefore must prevail, that in the division of the residue directed to be made among his children the testator's grandchildren and great grand-children cannot be included." The same view is taken in *Boylan v. Boylan,* 62 N. C., 160.

In *Carson v. Carson,* 62 N. C., 58, it is settled that where there are gifts in a will to children, grand-children cannot take when there are any persons answering to the descrip-

tion of children.   Upon the same principle a power con-
ferred upon a person to dispose of a fund among children
will not authorize a disposition of a part of the fund to grand-
children, at least while there are any children who can take
it."

A careful examination of our own Reports with the aid of
very excellent briefs of counsel, fails to disclose a single case
in which the term "children" has been held to include grand-
children.   An examination of the authorities shows that
this court is in harmony with the courts of other States and
of England.   Walworth, Ch. in *Mowatt v. Carow*, 7 Paige,
Ch. 339; 32 Am. Dec., 641, says.   "The word 'children' in
common parlance does not include grand-children or any
others than the immediate descendants in the first degree
of the person named as the ancestor; but it may include them
where there are no persons in existence who would answer to
the description of children in the ordinary sense of the word
at the time of making a will; or where there could not be any
such at the time or in the event contemplated by the testa-
tor; or where the testator has clearly shown by the use of
other words that he used the word children as synonymous
with descendants, or issue or to designate or include illegiti-
mate offspring, grand-children or step children."   Redfield
on Wills, p. 16, (3 Ed.).

"The word children when used in a will does not ordinarily
include grand-children, but grand-children and great grand-
children may take under this word if necessary to accomplish
the testator's intention."   *Scott v. Nelson*, 3 Porter, (Ala.),
452; 29 Am. Dec., 266.   "It is a well settled rule of con-
struction in this State as well as elsewhere that the word
'children' in a will does not include grand-children unless it
appears from the context to have been so intended by the
testator, or such meaning is necessary to carry out his mani-
fest intent."   Castner's Appeal, 88 P. St., 491.   Moncure,

P. in *Moon v. Stone,* 19 Gratt. (Va.), 328, uses the following language: "But whatever may be our conjecture on that subject we cannot give effect to any supposed intention which is not expressed by the words of the will. We sit here not to make wills for testators but to expound them. And we must give effect to every will as it is written by the testator provided it be legal, however strange and capricious it may seem to have been. . . . . Here is an express loan to his daughter Sallie during her natural life. This is plain language, and standing by itself cannot be misunderstood. What is there in the will to change its natural meaning? Only the word 'children', which twice follows it in the same clause. Now this word children is just as plain as the loan for life previously given. Its meaning is, issue in the first degree."

In *Reeves v. Brimen,* 4 Vesey, 697, the Master of Rolls says, "As to the principal point, it is a rule of construction that every word of a will must have a meaning imputed to it if it is capable of a meaning without a violation of the general intent or of any other provision in the will with which it may appear inconsistent. Children may mean grand-children when there can be no other construction; but not otherwise." The same principle is applied in *Hone v. VanSchaik,* 3 N. Y., 538; *Ewing v. Handley,* 4 Litt., (Ky.), 346; 14 Am. Dec., 140. In Estate of Hunt, 133 Pa. St., 260; 19 Am. St. Rep., 640, Grear, J., after stating the rule, says: "With us, it has never been departed from, but has been enforced in many instances, and never with any abatement of any of its terms." *Presley v. Dairs,* 7 Rich. Eq., (S. C.), 105; 62 Am. Dec., 396. In the case of *Parkman v. Bowdin,* 1 Sum., 359, Judge Story says: "Although in its primary sense the word "children" is a *descriptio personari* who are to take, there is not the slightest difficulty in giving it the other sense when the structure of the devise requires it."

The learned judge was not discussing the question as to whether the word "children," would include grand-children, but was dealing with a limitation in a deed, for he says: "So that in the present case there is an evident necessity of construing the word "children" to mean issue or heirs of the body. If so, they are words of limitation and not of purchase." So also is the point decided in Wild's case, 3 Coke's Rep., 288.

It is contended, however, that by reference to the said clause of the will it is apparent that the testatrix intended by the use of the word "children" to include her grand-children, because she therein provides that "My heirs who have received advancements during the life of my husband or myself are to present an itemized statement of such advances before they shall receive any payment of the property directed to be sold in my will; and if any of my heirs have received no advancements, to pay to them a sum sufficient to make them all equal, and if any remainder to divide the amount amongst all of my heirs. And if any of my heirs die before my death leaving heirs the children of such deceased parent or parents shall receive jointly the share coming to their parent or parents,—the share he or they would have received if he or they had been living at the date of my death." That this language indicates a purpose on the part of the testatrix to have an equal division of all her property "directed to be sold" between her children and the children of those who have predeceased her. It will be observed that in the fifth item of the will she directs a sale by the executors of her lot in Asheville and her interest in the Craggy Mountain land and a division of the money "among all my heirs." We thus see that she has used the word "heirs" in the fifth and seventh items of her will and the words "all my children" in the second and fourth items. Mrs. Lee died before the execution of the will leaving the

plaintiffs as her children. This fact, of course was known to the testatrix. The testatrix had other grand-children, being the children of her living children. If it be true as contended that no reasonable construction can be placed upon the entire will consistent with the general intention and purpose of the testatrix otherwise than by construing the word "children" to mean grand-children, and this general intent is so manifest as to exclude all reasonable doubt, then that construction must be placed upon the will as contended by the plaintiffs. It appears by the deposition of John R. Baird, one of the executors, that the Forest Hill property referred to in Item 2 is worth about $13,000. It is conceded that Mrs. Lee had been advanced $3,100. There is no suggestion as to the value of the property referred to in Item 4, or what amount, if any would remain after paying the expenses of the law suit referred to. It will be observed also that the Forest Hill property is given to Vickie Baird for life "and at her death to be sold and divided equally among all my children." While it may be that the executors would upon the death of Vickie be authorized to sell the property for the purpose of division no express duty is imposed upon them in that respect and it is very doubtful whether they have the power to sell; whereas, in Item 5 the language is: "I *request* my executors to sell," etc. Referring to Item 7, the language is: "The property directed to be sold in my will." It may well be that it was the property referred to in Item 5 given by the testatrix to "all my heirs," which was referred to in Item 7. This construction would exclude the language of Item 7 from any reference to Items 2 and 4. But it is said that the testatrix makes reference to any of her heirs who might "die before my death leaving heirs," etc. It is difficult to understand how she could have referred by this language to Mrs. Lee, who had been dead six years before testatrix made her will. Keeping in view the principle

that we must, if possible, ascertain and effectuate the intention of the testator and that in doing so we must keep in view the primary rule of construction, that every word and clause of the will shall be given force and effect and the further rule that words are to be construed in their primary and original sense, we conclude that the testatrix did not intend her grandchildren to share in the proceeds of her Forest Hill property; that she did intend them to share in the proceeds of the lots in Asheville and the Craggy Mountain land, she using in respect to that property the words "among all my heirs." Adopting this view, Item 5 is to be read in connection with Item 7, whereas Items 2 and 4 are not included in the provisions of Item 7.

Having thus disposed of the proceeds of the Forest Hill property, we proceed to ascertain the rights of the plaintiff and defendant in respect to the property mentioned in Item 5. The direction to sell operates as an equitable conversion and the property or proceeds thereof pass to the beneficiaries as personalty. *Mills v. Harris,* 104 N. C., 626; *Benbow v. Moore,* 114 N. C., 263. Therefore the word "heirs" must be understood and construed to describe those persons who would take as distributees. This would, of course, include the plaintiffs.

We can not consistently with the principle which we have announced adopt the argument of the defendant and construe the word "heirs" in the fifth and seventh clauses as synonymous with "children," thereby excluding the plaintiffs from all participation in the proceeds of the Asheville lots and the Craggy Mountain lands. The testatrix, by the same process of reasoning which we have followed in regard to the use of the word "children" must have understood that the word "heirs" was more comprehensive than "children," and used the words "all of my heirs" as including those who would have taken the property if she had died intestate.

---

There are some difficulties presented in treating the word "heirs" in a strictly legal sense. The property passes to the children and grandchildren as personalty and they take the proceeds. "It is too well settled to need citation of many authorities for its support that the term 'heirs' when used with reference to those to whom personal estate is given, means those who take by law, or under the Statute of Distributions." *Burgin v. Patton,* 58 N. C., 425; *Brothers v. Cartwright,* 55 N. C., 113; 64 Am. Dec., 563.

We are next required to ascertain the basis upon which the distribution is to be made. "It is well settled as a general rule that if a testator gives an estate to be equally divided between A and B and the heirs of C and the latter has several children, the division will be *per capita,* but if there be anything in the will indicative of an intention that the devisees or legatees shall take as families the general rule will not apply, and the property will be divided *per stirpes,* and not *per capita.*" *Burgin v. Patton,* 58 N. C., 426, citing *Ward v. Stow,* 17 N. C., 509; 27 Am. Dec., 238. Among the cases cited as falling within the exception to the general rule are *Marlin v. Gold,* 17 N. C., 306; *Spivey v. Spivey,* 37 N. C., 100; *Henderson v. Womack,* 41 N. C., 437. In *Bivens v. Phifer,* 47 N. C., 436, Battle J., referring to the language of Lord Langdale in *Martin v. Drinkwater,* 2 Beav., 216, says: "I consider the rule as settled that you are at liberty to prove the circumstances of the testator so far as to enable the court to place itself in the situation of the testator* at the time of making his will, but you are not at liberty to prove either his motives or intentions." *Lowe v. Carter,* 55 N. C., 377, at p. 386. Battle, J., in *Bivens v. Phifer,* 47 N. C., 436, says: "In construing his will in order to ascertain what that provision is intended to be we have a right to look at the condition of his estate as it is found to be at the time when the will was made." Availing ourselves

of this principle and of the admissions in the record in respect to the condition of Mrs. Baird's family known to her, and reading Items 5 and 7 together, it would be difficult to suppose that she intended to give her grandchildren, the children of Mrs. Lee, nearly one-half of the proceeds of the property, especially in view of the fact that the father of these children was a man of large means and in a prosperous condition. There is an evident purpose expressed in Item 7 to have equality in regard to the property directed to be sold. We are, therefore, of the opinion that the case falls within the exception to the general rule and that the children of Mrs. Lee take the portion of the proceeds of the property directed to be sold, which their mother would have taken if living. Are they to account for advancements made to their mother? The general rule is that in case of intestacy grandchildren must account for advancements made to their father or mother, but not gifts made to themselves. The children of Mrs. Lee take under the will as purchasers and not as distributees. The Statute of Distributions is only invoked for the purpose of ascertaining the basis or principle upon which the division is to be made. It will be noted that it is "my heirs who have received advancements during the life of my husband," etc. Treating the word "heirs" as describing the persons who are to take, the children of Mrs. Lee have received no advancements. This, of course, was well known to Mrs. Baird and it was equally well known that, their mother being dead, the word "heirs" could not refer to her. As she has excluded the children of Mrs. Lee from any interest in the Forest Hill and Marr Swamp places by the use of the word "children" we may reasonably infer that she was induced to do so because of the advancements made to their mother, and that she did not intend that her children should account for these advancements in the distribution of the other property because she must have known that to have

done so would practically disinherit them. It is said that she was a woman of intelligence, business capacity and gave her affairs careful and faithful consideration. Her property disposed of other than that specifically devised consisted of her Forest Hill property, the town lots, the Craggy Mountain property and Marr Swamp. She must have known something of the value of her property, and, of course, was fully cognizant of the condition of her family, number of children, etc., and we can not attribute to her the purpose to include the grandchildren in the distribution of the proceeds of the property mentioned in Item 5 and, by requiring them to account for the amount advanced their mother practically disinherit them. In the statement made by the executor the town lots and Craggy Mountain property sold for and is estimated to be worth $7,900. Mrs. Lee, the mother of the children, received $3,100; therefore, to call upon them to account for this, would be to disinherit them. This would be equally true if the Pea Ridge property, given to Mrs. Richards, and the 640 acres given to R. W. Baird, be treated as advancements, as seems to have been done in the estimate made by the executors. We think, however, that this property could not be treated as advancements under the language of Item 7. The term "advancment" as used by Mrs. Baird, must be understood to have been used in its ordinary and legal sense, and not to include property devised in her will. This view is strengthened by the language "who have received advancements during the life of my husband or myself." We, therefore, conclude that the plaintiffs are not to account for the advancements received by their mother—this by reason of the language of the will. The result of our anxious consideration and careful investigation of the case in the light of the authorities we have been able to find to aid us is that the plaintiffs take no interest in the Forest Hill property or in any balance that may remain of the Marr

Swamp property; that they are entitled to share in the proceeds of the Asheville lots and the Craggy Mountain property, taking the same share which their mother would have taken, if living; that they are not accountable for advancements. We do not understand that any controversy is made in respect to the rights of the plaintiffs in the share of the property which passed to Victoria Baird, under Item 5 of the will. If she died intestate, their rights are fixed by the Canons of Descent and the Statute of Distributions.

A judgment will be drawn in accordance with the decision of this court as herein set out. The costs will be paid by the executors out of the funds in their hands.

Modified.