Gaston, Judge.
 

 The enquiries which this case presents are exceedingly unpleasant, bift so far as the purposes of justice require, they must, be prosecuted to their legitimate result. The first of these enquiries is, whether the division complained of and sought to be reformed, be erroneous or correct. On. the part of the complainant, it is insisted that the last adjudication, of the court must be regarded as conclusively settling the construction of the will with respect to the real estate, and by necessary inference, fixing its construction also as to the personal property, it is also insisted, that if the interpretation of the will can be considered as
 
 open
 
 to discussion, the reasons on which that adjudication is founded, completely sustain it. Upon this point, the argument is briefly this: that where persons come to an estate as
 
 heirs,
 
 whether by descent or by purchase, tinder
 
 *511
 
 that description, they take
 
 per stirpes
 
 and not
 
 per capita,
 
 in a
 
 representative
 
 character'and not as
 
 individuals,
 
 and to others must be always considered as an unit, however they may subdivide and parcel outthe property among themselves. That if A dies intestate, seized of lands of inheritance, leaving a daughter and two daughters of a deceased daughter, his lands descend one half to his daughter and the other-half to his grand daughters, and that if a devise should .be made to them, simply as the heirs of A, they must take the estate in the same proportions ; that in the first case, the canons of descent ascertain the heirs, and direct the disposition of the land, and that in the latter case, the will gives to those whom the canons ascertain to be the heirs, and in such proportions as the canons direct. It is thus concluded from the force of the word
 
 heirs,
 
 that the persons indicated in the will as the heirs of
 
 John, Nancy
 
 and
 
 Sally
 
 are to be regarded as the representatives of, and substitutes for,
 
 John, Nancy
 
 and
 
 Sally,
 
 respectively, and taking the same sitares as if the land had been given
 
 to these
 
 persons, and then transmitted to them as the successors of these ancestors
 
 ;
 
 and that a similar result must take place with respect to the personal property, first, because it was obviously the intent of tiie testator, to give both species of property to the
 
 same
 
 persons in the
 
 same
 
 way, and secondly, because the word heirs as applied to personal property means heirs
 
 quoad
 
 that property, that is to say, those whom the statute of distributions directs to succeed to the personal estate of an intestate.
 

 None can be more deeply convinced than we are, of the necessity of a steady adherence to the decisions of. our predecessors. Carelessness in this respect can scarcely fail to involve us in error and throw the law into confusion. So far as the decisions of these eminent Judges concur with each other, they form a law for this court, which nothing short of what we may reasonably hope cannot happen, a manifest breach of the law of the land, can warrant us to disregard. Where they are found to conflict, which from the imperfection of all human institutions must sometimes be the case, the latest
 
 *512
 
 will of course be presumed right, yet not so conclusively right as to forbid examination. In the present singular case however, it is somewhat difficult to say, which of the two opposing' decisions has the better claims to be regarded as a precedent; for while the one is the more recent, the other has the advantage of having been unanimous; of having been decided upon argument, and of being a judgment in a case regularly and properly before the court. Convinced that we ought not to rely authoritatively and exclusively on thelast adjudication, we have deemed it an imperious duty, deliberately to investigate the argument by which it is supposed to be established.
 

 The whole of the reasoning is founded on the effect which the word
 
 heirs
 
 is supposed to produce in the devising and bequeathing clause.
 
 Jin heir
 
 is he who succeeds by descent to the inheritance of an ancestor, and in this, its appropriate sense, the word comprehends all heirs, and the heirs of heirs
 
 ail infinitum,
 
 as they are called by law to the inheritance. This succession is regulated by the canons of descent. According to one of these, the lineal descendants of any person deceased represent their ancestor, or stand in the place .in which such ancestor would have stood if living at the time of the descent cast and it is this taking by a right of. representation which is termed a succession
 
 per stirpes
 
 or by stocks, the branches taking the same share which their stock would have taken. From this definition, it would seem to follow, that in strictness none can come to an estate
 
 as heirs
 
 otherwise than by descent. Thus
 
 Lord Thurlom
 
 says in
 
 Jones
 
 v.
 
 Morgan,(1
 
 Brown 209,)
 
 “
 
 all heirs taking
 
 as heirs
 
 must take by descent.’ Upon this ground he holds the rule inflexible which requires that when a freehold is given to one and a remainder is so limited as to go in succession to the heirs of the first taker, these shall take by descent, because “taking in the
 
 character
 
 of heirs, they must take with the quality of heirs” — that is to say, must take by descent and not by purchase* But an inheritance may be limited in remainder to the heirs of him to whom a precedent freehold is not given, or it may be originally limited to the heirs of a deceased person. Here the do-
 
 *513
 
 uees do not take by descent, for their ancestor lias no estate which the word “heirs” can expand into an estate of inheritance. They do not therefore take as heirs but take simply as
 
 purchasers.
 
 But it is insisted for the plaintiff that nevertheless they'are
 
 described
 
 as “heirs;” that the law of descents is necessarily referred to for the understanding of that term, and the ascertainment of the persons thereby intended; and therefore this law is to regulate also the shares in which the thing given is to be enjoyed by those on whom it is bestowed. With the highest respect for those who have drawn this inference, wc are compelled to say that we do not feel its force. Every voluntary disposition of property takes effect according to the agreement of the contracting parties. Their intentions, properly expressed, give the mode and the form that constitute the
 
 law
 
 of the conveyance. The regulations of the State for the transmission of inheritances left vacant by death do not,
 
 proprio vigore
 
 operate on the subject matter of such conveyances, and can apply to them only so far as the parties have adopted them and directed them to be so applied. When a technical phrase is deliberately used, it is reasonable to suppose that ibis employed in- the Sense appropriated to it in the science or art from which it has been taken, and that science or art is very properly consulted for its interpre-pation. “Heirs” is a well known term in the law of descents, and when donees or devises are not otherwise described than as heirs, the law is impliedly referred to for the meaning of the term. But whether these donees or devisees are to take much or little, for a long or a short time, all together or by moieties in equal or unequal portions, the law of descents can give no information ; for it has made no provision in relation to these matters but has left all these to be regulated by the law which the parties may have themselves made in their conveyance. Is it then a reasonable inference that the conveyance refers to the law of descents
 
 for any such purposes?
 
 If there be indeed a settled rule of construction to this effect, it will most cheerfully be followed, but after diligent inquiry, I have been unable to find any traces of
 
 *514
 
 its existence. There are indeed some anomalous cases, in which the words
 
 “
 
 heirs male of the body,” and the like, although operating to a
 
 certain
 
 extent as words of pure description or purchase, have also.been allowed to operate as if they werewvords of limitation and according to the canons of descent. Tims it lias been said that where a limitation is made to
 
 the heirs male of the body
 
 of B, where no estate is in, or is given to B himself, though the limilation originally attaches-in his heir male under that special description, yct'on failure of his issue male, ii will go in succession to the other heirs male of the body of B, as if the estate had descended from B bimself. Here the word heirs has a double meaning and a mixed effect. The individuals who first take under this term, take as purchasers, designated by the relation which they hear to a deceased ancestor; hut they take an estate, which,
 
 by the form of the donation,
 
 is to pursue the same course of succession to the same extent of duration, and through the same persons as if it had attached to and descended from such ancestor. Such a limitation is of an intermediate description betwixt a descent and a purchase, in point of acquisition having the quality of the latter, as not being derived from or through the ancestor, hut in regard to its devolution referable to the former. This and sucli like cases are considered as
 
 quasi
 
 entails in regard to which the law is setttled, hut the principles on which it is settled arc not easily discoverable. (See
 
 Butler’s Ed.of Fearne,
 
 80 to 84.) How far the position may be true, that persons called to
 
 such an estate as heirs,
 
 take in a representative character with the shares or the portions which the canons of descent point out, may be a" very curious subject of enquiry; but it can throw little light upon the investigation in which we are now engaged. The term “ heirs” has here but a single meaning and can produce as we think but a single effect. It is not pretended nor assumed to be a word of limitation. It directs nothing as to the devolution or succession of the estate after it is vested in the original devisees or first takers, and its sole purpose seems to be to point them out. An estate not of inherit-
 
 *515
 
 anee, an estate for life, or a term of years, or a chattel, may be limited to persons not otherwise described than as the heirs, or the heirs of the body of a deceased person
 
 :
 
 and go an intestate of inheritance may he limited to persons thus designated, without any attempt to direct its transmission, as in a course of descent from that ancestor. In the first class of cases, the word heirs is necessarily, and in the last case is
 
 obviously
 
 one simply of description, whereby the donor or testator declares under a general term, instead of mentioning by their names the persons whom he contemplates as donees or devisees of his property. It is a collective term so far only as is every term which may comprehend within it more individuals than one, but it is not collective as calling in the whole
 
 succession
 
 of heirs to the deceased person. Whenever a descriptive phrase is used in any conveyance instead of an actual nomination, the import of the phrase must be attended to in order to find out the persons meant by it. If it be seen that by the term “heirs” those are intended who, at the time referred to, were or might be the
 
 “heirs”
 
 at law of a deceased ancestor, of course the law must be consulted to enable the enquirer to determine who answer to this description, and who therefore are these first takers.
 
 (Foster
 
 v.
 
 Sierra,
 
 4 Ves. 768.) Butthis determined, the sole purpose of the, reference is over; and the persons thus ascertained take simply and purely
 
 by virtue of the conveyance
 
 in their own persons, not as the representatives of others, precisely as though they had been individually named, or had been described by any other phrase sufficiently explicit to point them out. Thus in the case of
 
 Mounsey
 
 v.
 
 Blamire,
 
 (4
 
 Russell,
 
 384,) the testatrix by her will
 
 inter
 
 alia, devised her real estate to a person whom she described as her kinsman, and who was not her heir at law, and directed him to assume her name and arms. By a codicil she gave several pecuniary legacies, and amongst others “to my heir,” £4000. At her death this legacy was claimed by three persons who were her co-heirs,by her next of kin, and by the devisee of her real estate as the
 
 hocus f
 
 actus. The claim of the devisee was at
 
 *516
 
 once rejected by the master of the Rolls. In deciding between the next of kin and the co-heirs, he remarked, that where the word heir is used to denote succession, it may be understood to mean such person or persons as would legally succeed to the property according to its nature and quality
 
 ;
 
 but where it is used not to denote succession but to describe a legatee, and there is no context to explain it otherwise, it must be taken in its ordinary sense. The co-heirs therefore took the property, and there being no words of severance in the will, they took it as joint tenants. So if a man makes a gift of ga-velkind lands to J. S. and the heirs of his body, and he hath four sons, all these sons shall inherit; but if he make a lease for life to one, remainder to the right heirs of J. S. and J. S. dies, lea\ ing issue four sons, in this case, the eldest only shall have the remainder.
 
 (Shelby’s case,
 
 1
 
 Co.
 
 103,
 
 Co. Lit.
 
 10,
 
 Hob.
 
 31.
 
 Dyer 179 pl.
 
 45.) In the first instance, the word heirs of his body, are words of limitation, and call in all who by law can succeed to an estate tail in those lands; but in the last the words right heirs of J. S. are words of purchase, are
 
 descriptive
 
 merely, and refer to the law no further than is necessary to explain the description. If the donor, however, had added to these words “in gavel-kind — or according to custom,” or such like, then all the four sons would have taken, because all would have been included in the description.
 
 (Hargrave's Note to Co. Lit.
 
 10.
 
 Newcomen
 
 v.
 
 Barker,
 
 2
 
 Ves. 732.)
 
 So if one seized of lands in Borough English, devise to his “ heir,” the eldest son and not the youngest, would take
 
 ;
 
 but if he devise to his heir in Borough English, the lands will descend to such youngest son. (14
 
 Viner’s Ab.
 
 528, 529.
 
 Heir C.
 
 5
 
 pl.
 
 1,8.) I am forced to conclude, therefore, that when the term “heirs” is altogether a word of purchase and simply descriptive of the first takers — where it is not used to denote
 
 succession,
 
 but to designate
 
 persons,
 
 those who come under that description take as individuals, and not in a representative character, and of course take
 
 per capita,
 
 unless there be an intent to the contrary apparent on, or to be collected
 
 *517
 
 from, the instrument itself. But it is manifest in this case, not only that the word “heirs” does not denote succession, but that it is not used to designate those whom the law calls “ heirs at law.” The testator makes a devise of land to his brother
 
 John,
 
 and thereby recog-nises that
 
 John
 
 was alive at the date of the will. By the phrase “heirs of his brother
 
 John,”
 
 he must then contemplate persons other than those who are in law his heirs, and to give effect to this disposition, we are obliged to understand the word heirs in some sense different from its ordinary and legal meaning. It may mean heirs apparent or heirs presumptive. But in the same sentence we meet with the expression “heirs of my sister
 
 8ally, deceased;”
 
 and here it may mean heirs at law, but cannot mean heirs presumptive or heirs apparent. We find the same term used in the same sentence to designate persons standing in a certain relation to living persons, and also to dead persons. It cannot be interpreted in what is called its technical sense to mean those who
 
 have succeeded
 
 by law to the inheritance of their ancestor, because so interpreted it would exclude the heirs of his brother
 
 John
 
 and sister Nancy.—
 
 Nemo est hceres viventis.
 
 It cannot be interpreted in the sense sanctioned by custom, of heirs apparent or heirs presumptive; that is to say, of those who
 
 will probably
 
 inherit from a
 
 living ancestor,
 
 for then it would not embrace the heirs of his sister
 
 Sally.
 
 Besides, the term is used in reference to the gift of personal as well as of real property. Heirs, heirs apparent, heirs presumptive, ordinarily indicate those who have or expect a claim on the
 
 lands
 
 of another, by reason of their connection with him; hut those who acquire personal property on the death of its possessor, or look forward to its acquisition upon his death, are generally termed his relations or his next of kin. The word is used in some sense sufficiently comprehensive to take in all the objects of his bounty, and employed in relation to
 
 both
 
 species of property. Individually, I am quite satisfied that the testator means by it “children,” and I think-wo have this exposition given by himself in the preceding sen»
 
 *518
 
 tence, where he directs the land devised to his brother
 
 John
 
 for life to go upon his death “ to his brother
 
 John’s
 
 children.’' But the court does not decide this to be its meaning. We decide only that it does not mean
 
 heirs
 
 properly speaking, nor
 
 heirs
 
 apparent, nor
 
 heirs
 
 presumptive. It is unnecessary to determine whether it means children or issue, for upon either interpretation, the same result will follow. There is no reference expressly or impliedly to the canons of descent or to the statute of distributions ; not even for the purpose of ascertaining the first takers of the property, and still less for fixing the proportions in which they shall take it.— An improper term has been used by the testator, and in order to effectuate his intention, we are bound to give the will the same construction as though he had used the appropriate expression. If by “heirs” lie meant children or issue, we are to read the will as if it were written children or issue. It may not be amiss to quote a strong case in illustration of this doctrine, although it seems reasonable enough to stand without authority.— In
 
 Doe on dem. Hallen v. Ironmonger,
 
 (3
 
 East.
 
 533) lands were devised to a trustee to receive and pay the rents for the maintenance of
 
 Sarah Hallen,
 
 a
 
 feme covert,
 
 and the issue of her body, during her life, and after her decease, for the use of the heirs of her body, and their heirs and assigns forever, without regard to seniority of age or priority of birth, and in default of such, to the right heirs of the testatrix.
 
 Sarah Hallen
 
 enjoyed the premises during life, and had issue one son and two daughters. The son died before the mother,leaving the lessor of the plaintiff his son and heir at law, and also four other children. On her death, this ejectment was brought against her surviving daughters, and the question was, whether the plaintiff was entitled to recover any, and if any, what part of the premises. It was admitted that no estate of inheritance passed to
 
 Sarah Hallen,
 
 for that the legal estate during her life was in the trustees, but it was insisted first, that a legal contingent remainder was limited to such person or persons as should be the heir or heirs of her body, at the time of her death, under
 
 *519
 
 which description the eldest son was entitled to the whole ; and secondly, if the court thought that heirs of the body meant children, then such children would take as tenants in-common, and the-lcssor of the plaintiff was entitled to 'a third. It was urged upon the last point, that the qualifying expressions “ without regard to seniority of age, or priority of birth,” meant only that all the children should -take equal .portions ; those who came in
 
 esse
 
 last
 
 '■as
 
 well as first; that the word “heirs” was sufficient to
 
 sever the estate;
 
 and that it was plain that all were meant to take alike, which could not be without taking as ten» 'ants in common. But the court stopping the counsel for the defendants, held that the phrase, “without respect ■to seniority of age, or priority of birth,” annexed to the words heirs of the body, conclusi vely indicated that these were words of purchase, and
 
 meant
 
 children; and secondly, that as there were no words of severance used, they took as joint tenants, -and the father of the lessor of the plaintiff having diet! before severance, the whole vested ill the surviving children, the defendants.
 

 We
 
 are brought then irresistibly to the conclusion that the word
 
 “
 
 heirs” as used in this will, has not the peculiar operation which has been attributed to it, and that the persons whom the testator designated by this expression must take the shares, whatever they may be, which the will assigns to them, in the same manner as if they had been pointed out by any other and more appropriate terms. The will declares that the property giv'en to these persons
 
 shall be equally divided,
 
 and the only
 
 question that
 
 remains is, between whom is this equality directed. Is it between the
 
 classes,
 
 or is it between the
 
 individuals
 
 of which the classes are composed ? Adopting the language of Chief Justice Tateor upon the first adjudication, (3
 
 Hawks
 
 606,) we think (hat there “there has been a settled construction upon all devises and bequests of this description, recorded in a series of dccis-. ions to be traced back for more than a century,” which leaves us no liberty to speculate on this question. It can scarcely be necessary to swell the list of authorities to which he has appealed, and which clearly sustain his po-
 
 *520
 
 sitio». We will add only the following cases to tlio very strong ones which he has enumerated. In
 
 Davenport
 
 v.
 
 Hanbury, (3
 
 Vesey, 257,) a legacy was given to A or her issue. A died before the testator, leaving a son and
 
 two
 
 grandchildren, the children of a deceased daughter. It was liefd that the word issue included grand children and that the son and grand children all took as joint tenants, but that had the word “equally” or the words.
 
 il
 
 equally to be divided/’ been, inserted,, they would all have been' taken
 
 per capita.
 
 “ As there are no words of severanGC,.nor any thing to show that they were intended to take; notin their own-rights hutas representing others, the son and the children of the deceased daughter must be considered as
 
 personae dignatce,
 
 and will take as joint tenants.” In
 
 Barnes
 
 v.
 
 Patch
 
 (8
 
 Ves.
 
 604,)- there was a devise of real and personal estate to he equally divided “between my brother
 
 Lancelot’s
 
 and sister
 
 Esther’s
 
 families it was held that the children of Lance»
 
 lot
 
 and
 
 Esther
 
 took exclusively of their parents,, and all took equally
 
 per capita* In Lincoln
 
 v.
 
 Pelham,
 
 10
 
 Ves.
 
 166,) the testatrix bequeathed one-fourth of her personal estate to the younger children of a daughter A, a fourth to the younger children of a danghter B, a fourth to the child or children of a daughter C, (upon and after the death of said C,) and the remaining fourth
 
 to-
 
 tha child or children of a daughter Í), upon and after her death ; and directed that if either of the last mentioned daughters should have no child living at her death, the part allotted to
 
 her
 
 child or children should go to the child or children of the
 
 other,
 
 and if
 
 both
 
 of them, should die and leave no child as aforesaid, then these two fourths should be equally divided amongst the younger children of her daughter A, and the younger children of her daughter B. The daughters C and D both died unmarried, and it was held that these two last mentioned fourths were to be distributed among the younger children of A and B
 
 per capita.
 

 The result of our enquiries is a full conviction that the last adjudication of the court upon this will was ■wrong, and that the first was right,; and as there is no doubt
 
 *521
 
 but that the personal and real estate are given to the same persons and in the same shares,the error which the plai n tiff complains of in the division of the personalty and which it is the purpose of this bill to reform and correct, does not exist. We are therefore, all of opinion, that the plaintiff’s bill must be dismissed, but for obvious reasons, it is to be dismissed without costs.
 

 Per Curiam — Order accordingly.