Gaston, Judge,
 

 after stating the case, proceeded : — It may well be questioned, whether the refusal of the non-
 
 *129
 
 suit and of the instruction prayed for, brings before this court matters proper for its consideration. The will was made in South Carolina, and all disputes about its interpretation should be determined by the law of South Carolina. The courts of this state do not know the law of other states, and a controversy respecting that law is ordinarily one of fact, which must be decided on evidence by the jury, under the instruction of the court.
 
 State
 
 v
 
 . Jackson, 2
 
 Dev. 563. The only exception to this principle, that we are aware of, is to be found when the plea of
 
 nul teil record
 
 is pleaded to a judgment, or other proceeding of a court of record in another state; when, from'the ® necessity of the case, the court to whom it is exhibited must pass not only upon the existence of the supposed record, but upon its legal effect.
 
 Carter
 
 v.
 
 Wilson, ante,
 
 vol. 1, p. 364. It does not appear that any evidence was offered in this case of the law of South Carolina; but as the counsel on both sides have argued these points upon the construction of a will made in North Carolina, both assuming as a fact, that the law of South Carolina is the same with ours, we have examined the points, and shall declare our opinion upon them.
 

 pretatíon'óf a will made state, must be. de,ter-mineó, according to Jha/stlte^ The courts t,usstate do not know the
 
 ltZeí°wd'
 
 a contro-Ipecting" la'Tis one of feet, w5lic!f must be decided on tythejury under the offfiuTcourt. Tlie 0I?ly to thisrak, a
 
 record
 
 is mentofa cordhf"16"' another which case pass not °he^!°n enceofthe record 6but upon its leSal effect-
 

 The objection of a misjoinder of plaintiffs seems to us unfounded. It assumes, that one of two constructions might be put upon this will. It assumes, that the word “ children” either comprehends such only of the children of the testator’s daughter, as were in being at the death of the testator — and if so, those subsequently born had no interest in the subject given — or it comprehends those who were in being at the death of the legatee for life, and in that event the representatives of the children who died in her lifetime — or at all events the representatives of Sarah Knight, who was born after the death of the testator, and died before the legatee for life — have been improperly joined as plaintiffs. We understand the rules applicable to words of this description to be well sealed, Where a legacy is given to a described class of individuals, as to the children of A. B., and no period is appointed for the distribution of it, as the legacy is
 
 due
 
 at the death 0p the testator, and the two years allowed to the executor
 
 *130
 
 for settling the estate are given but for the convenience of the estate, the rights of the legatees are settled and determined at the death of the testator. Unless, therefore, something else appears in the will to indicate a different intent, the persons answering the description at his death, that is to say, the children of A. B. then in existence, or legally considered as then in existence, are alone entitled to the bequest. When the enjoyment of the thing given is not to be immediate, but is postpoped to a particular period, as at the death of A. B., and there are no special provisions in the will indicating a different intent, then not only those who answ'er the description at the death of testator, but those who come into being after his death, and before the time when the enjoyment is to take effect, so as to answer the description at any time before that assigned for the distribution, are all entitled to take., In the latter case all are embraced, because no inconvenience can result from taking them in, and each one of the family of children is supposed to have been comprehended by the testator within such general words. If any thus entitled to take, die before the period of distribution, and there are no words in the will indicating an ulterior disposition-of their interests, as to the survivors they are vested interests, and transmitted to their representatives. This was held in the case of
 
 Devisme
 
 v.
 
 Mello,
 
 1 Bro. Ch. Ca. (appendix) 537, with respect to the interest of one in being at the testator’s death, and dying before the legatee for life. On the same principle it follows, that this transmissible character is impressed on the interest of one coming into being after the testator’s death, and predeceasing the legatee for life. But this conclusion does not rest on principle only; it has been sanctioned by several decisions. In
 
 Spencer
 
 v.
 
 Bullock, 2
 
 Ves. Jr. 687, it was recognized as the established rule by the Master of the Rolls, though because of peculiar provisions in the will, he held the rule not applicable to the case before him; but in
 
 Taylor
 
 v.
 
 Langford,
 
 3 Ves. 119, a case in point, he not only admitted the rule but applied it.
 
 Malim
 
 v.
 
 Barker,
 
 3 Ves. 151.
 
 Middleton
 
 v.
 
 Messenger,
 
 5 Ves. 140, and
 
 Walker
 
 v.
 
 Shore,
 
 15 Ves. 124, are also direct authorities upon the point.
 

 
 *131
 
 We are also of opinion that construing the clause in question by the law of North Carolina, the Judge could not give the instruction which was asked for by the defendant. From the first settlement of our state, it has been a rule of property in limitations of slaves to one for life, with remainder to another, that the remainder carries the increase with the slaves, and vests the property thereof in him to whom the remainder is limited. Whether this rule was adopted in order to compensate the remainder-man for the deterioration of the parent stock by age whilst in the service of the temporary owner; or was founded on customs and legal notions brought into the infant colony by emigrants from Virginia, who were among its earliest settlers — it has been held as one particularly convenient for making a future provision in slaves, always regarded as far more valuable and permanent than other personal property, suited to the exigencies of growing families. According to this rule, the increase of Grace, as appurtenant to, and in legal contemplation, a part of Grace, became the property of the ulterior legatees, subject to the temporary interest of their mother, unless it could be clearly collected from the will that the testator
 
 excluded
 
 the increase from the gift of the parent stock. Upon this will such an intention is not to be collected. It is true that the increase are mentioned in the bequest for life, and are not mentioned in the bequest of the remainder; but the expression of what the law implies is but superfluous ; and the omission to mention with the thing given, that which the law annexes thereto, and considers as a part thereof, furnishes no reason to reject the legal sense of the gift. Besides, if the testator did not dispose of the increase in this clause, what did he
 
 intend
 
 should become of them ? The first legatee, his daughter, could enjoy them only her •life; for as he
 
 expressly
 
 declares — if not given to her children, then
 
 upon her death,
 
 they must fall into the residue, but this dead daughter is one of those to whom the residue is given. Is there not a moral certainty that he did not
 
 intend
 
 this? No aid is furnished in support of the construction set up by the defendant by a recurrence to the other clauses of the will. In a former clause a
 
 *132
 
 negro girl Hannah, is given to the testator’s daughter Obedience for life, and after her death, to the children of Obedience, and the word “ increase” is not used at all. In a subsequent clause, two negroes, Rose and Flora, are directed to remain in the possession of his executors, until his daughter Martha shall attain fourteen years of age, and then to be divided between his daughters Elizabeth and Martha; and in this clause the term “ increase” is used
 
 both
 
 in the special and in the ulterior disposition. On a comparison of these clauses, it seems to us apparent, that sometimes the testator omits the term “ increase,” and sometimes inserts it, when in all he intends the increase to pass.
 

 The other exceptions mentioned in the record, and not argued here, could not have been maintained. The instrument offered in evidence as the will of William Hicks, and its probate, were duly authenticated, according to the requirements of our act of 1802,
 
 (Rev.
 
 c. 623,) and therefore they were properly received in evidence. All the time when this suit was instituted, the defendant held and claimed the negroes sued for as his property, and therefore, no demand was necessary; but if a demand had been necessary, a sufficient one was fully proved, if the jury credited the testimony. The alleged estoppel was of no avail for many reasons. It is enough however to say, that a title in slave property cannot be made out by a parol estoppel. If any fraud were practised on the defendant by the plaintiffs, or any of them, he must seek redress as he may be advised ; but such fraud transferred to him no legal title in the slaves.' In the present case, however, the fact as to the supposed fraud was, and as we think unnecessarily, submitted to the jury, and by their verdict they have negatived it.
 

 Per Curiam. Judgment affirmed.