## MARSH v. DELLINGER.

. (December 19, 1900.)

1. *Estate—Life Estate—Contingent Remainders—Sale— Infants—Equity—Wills.*

   Where there are contingent and vested interests under a will subject to a life estate, a court of equity has power to order a sale to subserve the interests of all the devisees, if any of the contingent remaindermen are *in esse* and represented; but if infants are interested, equity requires that they be properly represented and protected, and it must be found as a fact that a sale of the property before the death of the life tenant will be for their benefit.

2. *Will—Distribution.*

   Where a will directs that property be divided equally among four children and two grandchildren, naming them, each of the grandchildren are entitled to a one-sixth part.

CIVIL ACTION by James H. Marsh, J. C. Marsh, and Dora A. Marsh, A. F. Kritz, and Annie M. Kritz, Henry F. Marsh, and Amelia Marsh, Mary C. Bynum and W. K. Bynum; James and Henry Marsh, and James C. Marsh, executors of Sarah Rachel Marsh, against Henry Marsh Dellinger and Chester A. Dellinger, minor heirs, heard by Judge *T. J. Shaw,* at October Term, 1900, of MECKLENBURG Superior Court. From judgment decreeing a sale, the defendants appealed.

*Clarkson & Duls,* for the plaintiff.
No counsel for the defendant.

FURCHES, J.   It appears from the will of Sarah Rachel Marsh, dated October 3, 1894, (a copy of which, marked "Exhibit A," was made a part of the case on appeal), that

she willed and devised the lands mentioned in the pleadings as follows: "I give and bequeath to my beloved husband, James Henry Marsh, the house and lot we now occupy, situate in the city of Charlotte, N. C., No. 313 E. Seventh street, and all the furniture and other goods that I may die possessed of, for his lifetime; also, one house and lot at Iron Station, Lincoln County, N. C., known as the 'Rankin Place,' and if the said Rankin be needed for my husband's support at any time, he may sell it, and if not needed, it shall be sold, and a monument be bought and erected on our lot in the cemetery; and I do devise that after the death of my husband the house and lot, No. 313 E. Seventh street, be sold, and the proceeds be equally divided between my children, Mary C. Bynum, James C. Marsh, Henry F. Marsh, Sarah Rachel Dellinger's two children, Marsh and Chester, and Annie M. Kritz; and I do devise that Mary C. Bynum's part be kept in trust for her benefit, and, should she die without issue, then her part shall revert back, and be divided among the rest of my heirs; and I do hereby devise that Henry F. Marsh's part be kept in trust for his benefit, and, should he die without issue, then his part shall revert back, and be divided among the rest of my heirs; and I do hereby devise that if either of my children shall wish to retain the house and lot, No. 313 E. Seventh street, shall have the privilege so to do by paying to the other children their parts."

The action is brought in the Superior Court, and all devisees, including the life tenant, are made plaintiffs, except the two infant grandchildren, Henry Marsh Dellinger and Chester A. Dellinger, and they are made defendants. At the commencement of the action they had no guardian, but the Court appointed James A. Bell guardian *ad litem* of these two defendants. The guardian *ad litem* answered for the infant defendants, and admitted the facts set out in the com-

plaint, among them, that it would be to the interest of his
wards to have the property sold.    Upon the case coming on
for trial upon the complaint and answer, a sale was ordered
of both lots; and a decree and order of sale were made, in
which the Court found that the life-tenant, James H. Marsh,
was 74 years old, and he was entitled to 28-674 dollars of the
price of the lot in Charlotte, and the whole of the price of
the lot at Iron Station.

The action was properly brought in the Superior Court,
having equitable jurisdiction, and it seems to us that the
Court had the power to order a sale of the property men-
tioned in the pleadings.    It is distinguishable from *Hutchin-
son v. Hutchinson,* 126 N. C., 671; *McKay v. McNeill,* 59
N. C., 258; *Justice v. Guion,* 76 N. C., 442; *Ex parte Mil-
ler,* 90 N. C., 625; and *Watson v. Watson,* 56 N. C., 400.
Indeed, the facts in this case distinguish it from any case
we have examined, where the question of the power of the
Court to order a sale for partition, or re-investment, is in-
volved.    It is held in *Ex parte Dodd,* 62 N. C.; 97, that,
where there are contingent interests, the Court has the power
to order the sale if any of the class of contingent remainder-
men are *in esse,* and are represented.    This case is more like
*Ex parte Dodd* than any of the other cases cited, and is dis-
tinguishable from that case.    But this case is much stronger
for the plaintiff, or in support of the power of the Court, than
*Ex parte Dodd.*    In this case, all the parties are *in esse,* and
are parties to this action, though the defendants are some-
what irregularly before the Court.

But the will expressly provides that if it become   neces-
sary for the support of the husband, J. H. Marsh, he shall
have the right to sell the house and lot at Iron Station.    It
also provides that the house and lot in Charlotte shall be sold
at the death of the life-tenant, J. H. Marsh, and the pro-

ceeds distributed and secured as above stated.    And the only question, then, is as to whether the Court can order this sale before the death of the life-tenant.    The interests of all the parties are settled by the will.    It is true that the interests of two of the devisees are limited estates, depending upon whether they die without issue.    But in that event there is no uncertainty as to who would take their estates, as they are to revert to the heirs of the devisor, who are the other parties to this action.    So we see no legal reason why the Court may not order the sale.    And doubtless this was the only question intended to be presented by this appeal, and our recollection is that the attorney who argued the case so stated.

But, upon an examination of the case, we find other reasons that prevent us from affirming the judgment appealed from. The defendants are infants, and the Court of Equity, while it has the power to order the sale, must see that the infants are properly represented and protected, and. must find as a fact that a sale of this property, made before the death of the life-tenant—the time specified in the will for its sale— will be for their benefit.    In Courts of Equity, in such cases, the usual rule was for the Court to refer the matter to the Master, or to some other competent person, who inquired— took evidence, by affidavit, of reliable disinterested persons— as to whether it would be to the interests of the infants to order the sale, which he reported to the court, with a. statement of the evidence.    We do not mean to say or to intimate that anything intentionally wrong has been done in this matter, but to say that it devolves on the Court to take these means of informing itself, in order that infants may be protected.    *Ferrell v. Broadway,* 126 N. C., 258.    In. this case the inquiry should be directed as to the benefit to the infant defendant, so far as the house and lot in Charlotte are con-

cerned, and as to the value of J. H. Marsh's life-estate, and as to whether it is necessary to sell the house and lot at Iron Station for the support of the plaintiff, J. H. Marsh.

There is one other error in the judgment of the Court. It gives Henry Marsh Dellinger and Chester A. Dellinger only one-tenth each, whereas they are entitled to a full share with the four children. There should be six shares, instead of five, and each one of them is entitled to one-sixth. The will provides that the Charlotte property "be sold, and the proceeds be equally divided between my children, Mary C. Bynum, James C. Marsh, Henry F. Marsh, Sarah Dellinger's two children, Marsh and Chester, and Annie M. Kritz." The will does not only put all these parties in one class, but it names them by name.

There is error.