MRS. ZENNIE LIDE AND HUSBAND, E. M. LIDE; LUCILE MARR AND HUS-
BAND, R. W. MARR; WALTER MARLETTE; LAWRENCE K. MEARS;
THELMA MEARS HENDERSON AND HUSBAND, K. A. HENDERSON;
MARK MEARS AND WIFE, MARGIE MEARS; GERALDINE MEARS
FIELDS AND HUSBAND, JAMES LEON FIELDS; MAMIE RUTHER
MEARS HALLEY AND HUSBAND, LEONARD B. HALLEY; LINTON NOR-
MAN MEARS AND WIFE, MARY MEARS, AND LAWRENCE K. MEARS,
TRUSTEE, v. BERNARD LAWRENCE MEARS, LYNN LAREE MEARS
AND MARY VICTORIA MEARS, CHILDREN OF ALTON HORACE MEARS,
DECEASED, AND ALL UNKNOWN PERSONS, BY THEIR GUARDIAN AD LITEM,
W. R. FRANCIS, AND FLORENCE SADLER.

(Filed 23 November, 1949.)

**1. Declaratory Judgment Act § 2c—**

The Declaratory Judgment Act does not authorize courts to give advisory opinions or academic legal guidance, but actions for declaratory judgments will lie for an adjudication of rights, status or other legal relations only when there is an actual or existing controversy between the parties. G.S. 1-253.

**2. Same: Declaratory Judgment Act § 4—**

A litigant seeking a declaratory judgment must set forth in his pleading all facts necessary to disclose the existence of an actual controversy between the parties, but the adverse party cannot confer jurisdiction on the court by failing to demur to an insufficient pleading.

**3. Same—**

The court acquires jurisdiction to render a declaratory judgment as to those matters concerning which it can be inferred from a liberal interpretation of the pleading that there is an actual or existing controversy between the parties.

**4. Trusts § 28—**

Where a will gives specific directions that a trust therein created shall terminate twenty years from the date of testator's death, upon expiration

of this twenty year period the *corpus* of the estate passes to the beneficiaries entitled thereto and the offices and duties of the trustees end.

**5. Wills § 31—**

A will must be construed as it is written.

**6. Same—**

Where a will, in one item, provides for the distribution of income from property to be held in trust, and by subsequent item directs that upon the termination of the trust the property should be equally divided among the "heirs" of testator's children, *held*, a codicil, amending the first item by making disposition of a parcel of the property in fee, controls, and precludes the division of such parcel among the heirs of testator's children upon the termination of the trust.

**7. Wills § 33b—**

A devise of one-half interest in realty for life of the beneficiary and at his death "in fee to his bodily heirs" gives the beneficiary the fee simple title to an undivided one-half interest under the rule in *Shelley's case*.

**8. Wills § 33c—**

A devise of realty in fee with the proviso that if the beneficiary should die without bodily heirs the property should go to another, confers a defeasible fee which is converted into a fee simple absolute upon the death of the beneficiary leaving issue.

**9. Same—**

Testator devised the land in question to his two granddaughters in fee, defeasible as to each upon her dying without issue living at the time of her death, in which case her share was to go to the survivor. *Held:* The defeasance was contingent upon the happening of two events (1) the death of one beneficiary without issue and (2) the survivorship of the other, and upon the death of one of the grandchildren leaving a child her surviving, the other grandchild takes a fee simple absolute and indefeasible as to the other share, since the second contingency was rendered impossible of happening.

**10. Wills § 34b—**

Where a will directs that at the termination of the trust therein set up, the property should be "equally divided between the heirs of my children . . . *per stirpes*," the beneficiaries take by right of representation through their respective parents and not as individuals.

**11. Wills § 33g—**

Testator set up a trust with provision that a specified beneficiary should be entitled to the use of certain property so long as she paid taxes and kept same in repair, but with discretionary power in the trustees to sell the specified property at any time for reinvestment. By another item it was directed the trust should terminate at the end of twenty years from the date of testator's death and the *corpus* be divided as specified. *Held:* The beneficiary did not take a life estate but only a conditional right of occupancy pending sale or termination of the trust, and upon the termination of the trust all her interest in the property ceased.

**12. Wills § 33c—**

The will in suit set up a trust with provision that at the expiration of twenty years the trust should terminate and the *corpus* be distributed to the heirs of testator's children. *Held:* Upon the death of testator the remainder vested in the children of the son and daughter of testator with the right of enjoyment postponed until the expiration of the twenty years, and their rights are not dependent upon whether or not they survive the twenty year period.

**13. Declaratory Judgment Act § 2c—**

Where it is not alleged that a prospective purchaser has been obtained for the property in question, the courts will not give an advisory opinion as to the marketability of the title.

**14. Infants § 2: Declaratory Judgment Act § 1—**

The court may not order that the interests of infant defendants in certain realty be sold in the absence of allegation or evidence that such sale would benefit them. Whether the inherent power of a court of equity to authorize such sales in proper instances may be exercised in proceedings under the Declaratory Judgment Act, *quære?*

APPEAL by defendants from *Moore, J.,* in Chambers, 15 August, 1949, in action pending in the Superior Court of HAYWOOD.

Marcus Jackson Mears died testate in Haywood County, North Carolina, 8 December, 1919, survived by his son, Lawrence K. Mears, and his daughter, Zennie Lide, who are parties to this action.

The two children of Zennie Lide, to wit, Lucile Wells and Cornelia Wells, and the six children of Lawrence K. Mears, to wit, Thelma Mears Henderson, Mark Mears, Geraldine Mears Fields, Mamie Ruth Mears Halley, Linton Norman Mears, and Alton Horace Mears, were living at the death of their grandfather, Marcus Jackson Mears. Lucile Wells and Cornelia Wells afterwards married. The former and her husband, R. W. Marr, are still living, but the latter died at an undisclosed date, survived by an only son, Walter Marlette. Alton Horace Mears also passed from life sometime after 8 December, 1939, leaving a widow, Florence Sadler, who has since remarried, and three children, Bernard Lawrence Mears, Lynn Laree Mears, and Mary Victoria Mears.

The will of Marcus Jackson Mears consists of these two testamentary documents: (1) An original will dated 25 May, 1917, and hereinafter called the will; and (2) a codicil dated 25 September, 1919, and hereinafter designated as the codicil. These documents were before this Court in *Lide v. Wells,* 190 N.C. 37, 128 S.E. 477, a case which did not involve the questions arising on the present appeal.

By the first and second items of the will, the testator put his real property in trust for a term of years from the date of his death for the benefit of his son, Lawrence K. Mears, and his daughter, Zennie Lide. The

original will committed the control of the trust estate to a single trustee, to wit, R. M. Wells, who was also made executor; but the codicil appointed Lawrence K. Mears a co-trustee to act with the "other trustee named in the will in the management of the property." Various items of the will and codicil conferred upon the trustees power to sell particular pieces of the testator's land at specified times during the existence of the trust. The eighth item of the will required the trustees to invest any moneys arising from such sales in Federal and State bonds, and provided that the interest accruing on such bonds would "be disposed of and distributed in the manner set out" in the third item of the will, which is hereinafter quoted. The testator made express stipulations as to the duration and termination of the testamentary trust in the eleventh item of the will and the third item of the codicil. The eleventh item of the will is as follows: "That this trust shall remain in full force and effect for sixty years from the date of my death, at which time my said estate shall be equally divided between the heirs of my children, and they shall receive all of my property, both real, personal and mixed, *per stirpes.*" The third item of the codicil amends the eleventh item of the will by substituting the words "twenty years" for the words "sixty years."

Both R. M. Wells and Lawrence K. Mears accepted the trust and administered it "in accordance with the provisions of said will and codicil." Wells died 17 October, 1941.

The testator was the owner in fee simple of two specific bodies of land in Canton, North Carolina, which were not sold by the trustees. One piece of this realty, which is hereafter called the store property, consists of approximately 5,525 square feet of land containing two brick store buildings, and the other, which is hereafter designated as the hotel property, embraces a hotel building and adjacent vacant land ordinarily used in connection therewith.

The testamentary provisions dealing in express terms with the store property are the third item of the will and the first item of the codicil. By the third item of the will, the testator directed his trustee to take charge of the two brick store buildings in Canton, to lease them, and to pay the net rent accruing on them "to my said son and daughter in the following manner, to wit: One-half to Lawrence K. Mears so long as he uses said funds for the use of his children, their maintenance and education; but in event my son shall fail to apply said funds to the proper support of his said children, then my said Trustee, in his discretion, from time to time, is ordered and directed to pay any funds which may come into his hands, as aforesaid, from my estate, to his said children for their support and maintenance or their heirs in case of the death of his said children, and such an amount as in his discretion seems right, to the said Lawrence K. Mears himself from time to time. My said Trustee, after

paying said necessary expenses of said buildings as hereinbefore set out, shall pay the remaining one-half of said net income from said buildings, as follows: To my daughter, Mrs Zennie Lide, one-third and the remaining two-thirds to my granddaughters, Lucile Wells and Cornelia Wells, and in the event of the death of my daughter, Mrs. Zennie Lide, then each of my said two above named grandchildren are to receive one-third given to my daughter. And in the event of the death of my said grandchildren, Lucile and Cornelia Wells, and the death of my said daughter, then the surviving one is to receive the remaining portion."

The first item of the codicil is as follows: "That the store buildings mentioned in paragraph three of my said Will may be sold on or before ten years after my death by my trustee and Executor; and the one-half interest in said paragraph three given to Lawrence K. Mears, be and the same is hereby changed in this respect, that is, the said Lawrance K. Mears shall have the said one-half interest for and during his natural life, and at his death in fee to his bodily heirs, thereby revoking that portion of said paragraph three which makes it obligatory upon my son, Lawrence K. Mears, to use the income from said property for the maintenance and education of his children. In the portion of said paragraph three which devises and bequeaths to my daughter, Mrs. Zennie Lide, one-third to her and remaining two-thirds to my two grand-daughters, Lucile Wells and Cornelia Wells, be changed in this respect, that is to say, that I will and bequeath to my said daughter, Mrs. Zennie Lide, for life the property therein described and in remainder to my two grand-daughters, Lucile Wells and Cornelia Wells, in fee; but in the event of the death of my said grand-children, Lucile Wells and Cornelia Wells, or the death of either of them, without bodily heirs, then in that event the one surviving is to receive the other's portion of said property."

The sixth and seventh items of the will and the fourth item of the codicil make specific reference to the hotel property. The sixth item of the will is as follows: "My said Trustee is hereby authorized and empowered and directed to dispose of my hotel property situate in the Town of Canton, North Carolina, by deed to any purchaser or purchasers . . . at such time as in the discretion of my said Trustee may seem right and proper, and receive the proceeds from said sale and invest the same, after paying all expenses, in the manner hereinafter set out in eighth item of this Will." The seventh item of the original will contains these provisions: "I hereby authorize and direct my said Trustee to lease to my said daughter, Mrs. Zennie Lide, the hotel in which I now live, together with the grounds or lands adjacent thereto, so long as the same remains unsold by my Trustee, for which no charges shall be made to my said daughter, except that she shall from time to time keep the said building and grounds on which said hotel is situate in good repair, pay the

taxes and assessments on the same, and pay the fire insurance premiums and all other necessary expenses to keep said building and lot in as good repair as it is at present, and my said daughter shall pay all repairs, etc., above mentioned until my said Trustee may in his discretion see fit and proper to sell the same as hereinbefore set out, at which time said lease and occupancy shall immediately terminate. And in event my said daughter shall fail to make said repairs, etc., above set out, then my said Trustee is ordered and directed, in his discretion to terminate said lease, and rent said hotel and grounds at the best rental, and the proceeds derived therefrom to be divided as hereinafter set out in item 8 of this Will."

The fourth item of the codicil is in these words: "That the hotel mentioned in paragraph seven of my said Will may be occupied by my daughter, Mrs. Zennie Lide, upon the payment of the taxes and insurance by her; but in the event she does not wish to occupy the same, then my Executor and Trustees are authorized to lease the said building to responsible persons, who have no children, or to persons who will not destroy, deface or impair the value of the property. But in no event shall those occupying said hotel deface or impair the buildings or the grounds; and my Executor may sell the same within two years after my death, and the proceeds arising from the sale thereof, and from the sale of all of my property referred to in this codicil, shall be invested in the manner set out in this my said Will."

The plaintiffs brought this action against the widow and children of the late Alton Horace Mears for the avowed purpose of obtaining a declaratory judgement construing certain provisions of the will and codicil and adjudicating the respective rights of the parties thereunder in the store property and the hotel property. The complaint details the matters and things set forth above. In addition thereto, the plaintiffs allege that they have received an offer for the purchase of the store property; that they are willing to accept such offer, "but some question has been raised as to whether or not a good merchantable title to said property can be conveyed to the proposed purchaser; that by reason thereof they "desire the direction of the Court as to the saleability of said premises and the distribution of the proceeds to be derived from the sale"; that they also desire to sell a specifically described portion of the hotel property, which is vacant and "not necessary to the hotel"; that they desire to be advised by the judgment of the Court as to who are the proper parties to execute title to the store property and the specifically described portion of the hotel property "if they can be sold; whether Lawrence K. Mears, Mrs. Zennie Lide, Mrs. Lucile Marr, and Walter Marlette, or should a Commissioner be appointed to convey said property."

The complaint does not disclose the amount or terms of the offer for the store property, or the name of the person making such offer, or the identity of the person who questions the marketability of the title of the parties to the property. It does not state any proposed conditions for the desired sale of the specifically described portion of the hotel property. Furthermore, neither the complaint nor the answer suggest in any way that any benefit would accrue to the children of the late Alton Horace Mears from the sale of any interests which they may have in the property mentioned in the pleadings.

All of the parties to the action are adults, except the three children of the late Alton Horace Mears. These minors have no general or testamentary guardian, and they defend in this cause through W. R. Francis, their guardian *ad litem*. No issues of fact were raised by the pleadings, and the action was heard before his Honor, Dan K. Moore, the resident judge of the judicial district comprehending Haywood County, in chambers at Sylva, North Carolina. Judge Moore entered judgment, and the defendants excepted thereto and appealed, assigning errors. To avoid tedious repetition, the pertinent provisions of the judgment and the assignments of error are set forth in the opinion which follows this statement of facts.

*Smathers & Meekins for plaintiffs, appellees.*
*W. R. Francis for defendants, appellants.*

ERVIN, J. The Uniform Declaratory Judgment Act, as approved by the National Conference of Commissioners on Uniform State Laws in 1922 and as adopted in North Carolina in 1931, provides that "courts of record within their respective jurisdictions shall have power to declare rights, status, and other legal relations, whether or not further relief is or could be claimed." G.S. 1-253.

There is much misunderstanding as to the object and scope of this legislation. Despite some notions to the contrary, it does not undertake to convert judicial tribunals into counsellors and impose upon them the duty of giving advisory opinions to any parties who may come into court and ask for either academic enlightenment or practical guidance concerning their legal affairs. *Tryon v. Power Co.,* 222 N.C. 200, 22 S.E. 2d 450; *Allison v. Sharp,* 209 N.C. 477, 184 S.E. 27; *Poore v. Poore,* 201 N.C. 791, 161 S.E. 532; Anderson on Declaratory Judgments, section 13. This observation may be stated in the vernacular in this wise: The Uniform Declaratory Judgment Act does not license litigants to fish in judicial ponds for legal advice.

The Act recognizes the need of society "for officially stabilizing legal relations by adjudicating disputes before they have ripened into violence

and destruction of the *status quo.*" Borchard on Declaratory Judgments (2nd Ed.), 4. It satisfies this social want by conferring on courts of record authority to enter judgments declaring and establishing the respective rights and obligations of adversary parties in cases of actual controversies without either of the litigants being first compelled to assume the hazard of acting upon his own view of the matter by violating what may afterwards be held to be the other party's rights or by repudiating what may be subsequently adjudged to be his own obligations. *Tryon v. Power Co., supra; Green v. Casualty Co.,* 203 N.C. 767, 167 S.E. 38; 16 Am. Jur., Declaratory Judgments, section 7; 1 C.J.S., Actions, section 18; Anderson on Declaratory Judgments, section 71.

While the Uniform Declaratory Judgment Act thus enables courts to take cognizance of disputes at an earlier stage than that ordinarily permitted by the legal procedure which existed before its enactment, it preserves inviolate the ancient and sound juridic concept that the inherent function of judicial tribunals is to adjudicate genuine controversies between antagonistic litigants with respect to their rights, status, or other legal relations. This being so, an action for a declaratory judgment will lie only in a case in which there is an actual or real existing controversy between parties having adverse interests in the matter in dispute. *Etheridge v. Leary,* 227 N.C. 636, 43 S.E. 2d 847; *Tryon v. Power Co., supra; Wright v. McGee,* 206 N.C. 52, 173 S.E. 31; *Light Co. v. Iseley,* 203 N.C. 811, 167 S.E. 56; *In re Eubanks,* 202 N.C. 357, 162 S.E. 769; 16 Am. Jur., Declaratory Judgments, section 9; 1 C.J.S., Actions, section 18; Anderson on Declaratory Judgments, section 22; Borchard on Declaratory Judgments (2d Ed.), 40-48. It necessarily follows that when a litigant seeks relief under the declaratory judgment statute, he must set forth in his pleading all facts necessary to disclose the existence of an actual controversy between the parties to the action with regard to their respective rights and duties in the premises. *Tryon v. Power Co., supra; Light Co. v. Iseley, supra;* 16 Am. Jur., Declaratory Judgments, section 64; 1 C.J.S., Actions, section 18; Anderson on Declaratory Judgments, section 80. If he fails to do this, the other party cannot confer jurisdiction on the court to enter a declaratory judgment by failing to demur to the insufficient pleading. *Wright v. McGee, supra.*

Candor compels the observation that the pleadings in the case at bar do not show the existence of a controversy between the parties as to the meaning of the will or as to their rights thereunder with the explicitness of allegation desirable in declaratory judgment actions. But when these pleadings are interpreted with extreme liberality, they do reveal by implication rather than by express averment that the plaintiffs and the defendants are in dispute as to whether the duties of Lawrence K. Mears as surviving trustee of the testamentary trust have ceased and as to the

respective interests given to them by the will and codicil in the store property and the hotel property of the testator in Canton. In consequence, the court below was empowered to render a declaratory judgment covering these matters.

By virtue of the specific direction of its creator as set forth in the eleventh item of the will and the third item of the codicil, the testamentary trust continued for twenty years after the death of the testator, and terminated upon the expiration of that period. At that time the *corpus* of the trust passed to the beneficiaries entitled to it under the will, and the offices and duties of the trustees ended. 54 Am. Jur., Trusts, section 73; 65 C.J., Trusts, section 15. It appears, therefore, that the trial court properly adjudged that "all duties of Lawrence K. Mears as trustee ceased upon the termination of the trust estate on December 8, 1939."

The judgment declared that Lawrence K. Mears, Zennie Lide, Lucile Wells Marr, and Walter Marlette own the store property in the manner hereinafter set out, and that the remainder of the plaintiffs and the defendants have no interest therein. The defendants excepted to this adjudication.

It is elementary that a will must be construed as it is written. *Hornaday v. Hornaday,* 229 N.C. 164, 47 S.E. 2d 857. The controlling testamentary provisions on this aspect of the case are the third item of the will and the first item of the codicil. When the words of the testator are accorded their plain meaning, it is evident that the codicil effects drastic changes in the provisions of the will relating to the store property. The third item of the will is concerned with the income arising from this property whereas the first item of the codicil deals with the property itself. This codicillary provision makes specific disposition of the store property in fee and in that way precludes its division among "the heirs" of the testator's children under the eleventh item of the original will.

The trial court adjudged that Lawrence K. Mears took a fee simple title to an undivided one-half interest in the store property under the portion of the first item of the codicil providing that "the said Lawrence K. Mears shall have the said one-half interest for and during his natural life, and at his death in fee to his bodily heirs." This ruling is sound for the rule in *Shelley's case* applies to this devise. *Williams v. R. R.,* 200 N.C. 771, 158 S.E. 473; *Helms v. Collins,* 200 N.C. 89, 156 S.E. 152; *Bradley v. Church,* 195 N.C. 662, 143 S.E. 211; *Hartman v. Flynn,* 189 N.C. 452, 127 S.E. 517; *Bank v. Dortch,* 186 N.C. 510, 120 S.E. 60; *Jarman v. Day,* 179 N.C. 318, 102 S.E. 402.

· The trial court further declared that Zennie Lide holds a life estate in the other undivided half interest in the store property, and that the remainder in such other undivided half interest therein is vested in Lucile

Wells Marr and Walter Marlette in equal shares and in fee simple absolute. This conclusion is valid.

The first item of the codicil conferred upon Lucile Wells Marr and Cornelia Wells Marlette, respectively, a remainder in fee in one undivided half of the store property, defeasible as to each upon her dying without issue living at the time of her death, and in case either died without issue living at the time of her death, her share was to be owned in fee by the survivor. G.S. 41-4; *Henderson v. Power Co.,* 200 N.C. 443, 157 S.E. 425, 80 A.L.R. 497; *James v. Griffin,* 192 N.C. 285, 134 S.E. 849; *Ziegler v. Love,* 185 N.C. 40, 115 S.E. 887. The estate of Cornelia Wells Marlette in the remainder was converted from a defeasible fee into a fee simple absolute on her death leaving a living son, and her son thereupon acquired her share in the remainder entirely freed from the contingent limitation over. *Vinson v. Gardner,* 185 N.C. 193, 116 S.E. 412. Moreover, the death of Cornelia Wells Marlette made the estate of Lucile Wells Marr in the remainder absolute under the rule that "where an estate has been devised in fee, subject to be defeated by the happening of some future event or contingency, if the happening of such event or contingency becomes impossible of occurrence, the defeasible fee becomes a fee simple absolute." 69 C.J., Wills, section 1559. The gift over of the share in the remainder devised to Lucile Wells Marr was to take effect upon the happening of two events: (1) The death of Lucile Wells Marr without issue living at her death; and (2) the survivorship at her death of her sister, Cornelia Wells Marlette. The prior death of the latter made the happening of the second of these events impossible, thereby destroying the gift over with the result that the fee of Lucile Wells Marr in her share in the remainder became absolute and indefeasible. *Gorham v. Betts,* 86 Ky. 164, 5 S.W. 465; *Anderson v. Brown,* 84 Md. 261, 35 A. 937; *Armstrong v. Thomas,* 112 Miss. 272, 72 So. 1006; *Groves v. Cox,* 40 N. J. Law 40; *Gordon v. Gordon,* 32 S.C. 563, 11 S.E. 334; *Lowry v. O'Brian,* 25 S. C. Eq. 262, 57 Am. Dec. 727; *Smith v. Smith,* 112 Va. 617, 72 S.E. 119; 57 Am. Jur., Wills, section 1247.

This brings us to the adjudication of the court as to the respective rights of the parties in the hotel property. The judgment declared "that Mrs. Zennie Lide is entitled to the free occupancy of the hotel building and the lot on which it is situated for the term of her natural life, either personally or through tenants, or so long as she shall pay the taxes and upkeep and repair of said building and keep the same insured against loss by fire" and that the "heirs" of the testator's children and their representatives, who are properly identified by the court, own the remainder in the hotel property in certain specified proportions. The defendants excepted to this ruling in so far as it adjudged that Mrs. Zennie Lide has any present interest in the hotel property.

The testator placed his real estate, including the hotel property, in trust for the twenty years next succeeding his death. By the eleventh item of his will as modified by the third item of his codicil, he directed that at the expiration of that period his trust estate should be equally divided between "the heirs" of his children, who should take *per stirpes, i.e.,* by right of representation through their respective parents and not as individuals. *Haywood v. Rigsbee,* 207 N.C. 684, 178 S.E. 102; *Lee v. Baird,* 132 N.C. 755, 44 S.E. 605; *Ward v. Stow,* 17 N.C. 509, 27 Am. D. 238; 69 C.J., Wills, section 1312. No other testamentary provision renders the eleventh item of the will inapplicable to the hotel property. The seventh item of the will and the fourth item of the codicil do not do so. In truth, they merely conferred upon Zennie Lide a conditional right to occupy this property pending its sale by the trustees or the termination of the trust. Hence, the right of occupancy of Mrs. Lide under the will and codicil did not survive 8 December, 1939, and the court erred in adjudging that she has any present interest in the hotel property. This error was evidently occasioned by a too literal reliance upon certain language in the opinion in *Lide v. Wells, supra,* where the Court was merely considering the respective rights of the trustees and Mrs. Lide in the hotel property during the existence of the trust.

G.S. 41-6 provides that "a limitation by deed, will, or other writing, to the heirs of a living person, shall be construed to be to the children of such person, unless a contrary intention appear by the deed or will." By virtue of this statute, the word "heirs," as used in the eleventh item of the will, must be construed to mean the "children" of the son and daughter of the testator. *Moseley v. Knott,* 212 N.C. 651, 194 S.E. 100; *Massengill v. Abell,* 192 N.C. 240, 134 S.E. 641; *Lide v. Wells, supra.* All of the children of Lawrence K. Mears and Zennie Lide were living when the testator died. Consequently, they took estates in the hotel property which vested in right at that time with only the possession or enjoyment postponed until the expiration of the twenty years. *Bell v. Gillam,* 200 N.C. 411, 157 S.E. 60; *Lide v. Wells, supra; Cooley v. Lee,* 170 N.C. 18, 86 S.E. 720; *Jones v. Oliver,* 38 N.C. 369. Alton Horace Mears died subsequent to the termination of the trust, and his estate in the hotel property thereupon descended to his children, subject to the right of his widow to dower therein. The record does not disclose the date of the death of Cornelia Wells Marlette. Since her interest vested in right at the death of the testator, it passed by inheritance to her son, regardless of whether she died before or after the expiration of the twenty year period specified in the will. *Knight v. Knight,* 56 N.C. 168; *Mason v. White,* 53 N.C. 421; *Knight v. Wall,* 19 N.C. 125. It appears, therefore, that the following parties own the hotel property as tenants in common in the following proportions: (1) Lucile Wells Marr and Walter Mar-

lette, one-fourth each; (2) Thelma Mears Henderson, Mark Mears, Geraldine Mears Fields, Mamie Ruth Mears Halley, and Linton Norman Mears, one-twelfth each; and (3) Bernard Lawrence Mears, Lynn Laree Mears, and Mary Victoria Mears, one-thirty-sixth each. The shares of the last three are subject to the dower right of their mother, Florence Sadler.

The court rightly refrained from making any specific declaration as to the salableness of the title to the property in suit. This is true because declaratory judgment acts do not empower courts to give advisory opinions as to the marketability of land merely to enable owners to allay the fears of prospective purchasers. Anderson on Declaratory Judgments, section 8.

The court did not stop, however, with mere declarations as to the meaning of the will and codicil, and as to the rights of the parties thereunder in the store property and the hotel property. It incorporated in the judgment provisions ordering the sale of the store property and of the specifically described portion of the hotel property for named amounts, and appointing a commissioner to make such sales and to execute conveyances to the purchasers, and providing for the division of the proceeds arising from such sales among the parties to the action according to their respective rights in the land to be sold as declared by the judgment.

These provisions are not declaratory in nature, and the plaintiffs, who are *sui juris,* have not appealed. For these reasons, we are not concerned on this appeal with the validity of these provisions of the judgment in so far as they relate to the sale of the store property and the interests of the various plaintiffs in the hotel property. But an appropriate exception interposed by the defendants requires us to pass upon their effectiveness in so far as they purport to authorize or direct a sale of the interests of the infant defendants in the hotel property or any part thereof.

There is some diversity of opinion in the various jurisdictions as to how far courts may properly go in awarding affirmative relief in declaratory judgment actions. The present record presents no occasion for expressing an opinion on this question. It is plain that the declaratory judgment acts do not abrogate the ordinary rules of pleading and evidence. Even the most liberal courts will not grant affirmative relief in a declaratory judgment action in the absence of pleading and proof warranting such relief. 16 Am. Jur., Declaratory Judgments, section 73.

Since there is no suggestion by pleading or evidence that the proposed sale of the interests of the infant defendants in the hotel property will benefit them, the order for the sale of such interests is without warrant in the record and must be stricken from the judgment, even if it be conceded that the court may exercise in a declaratory judgment action its inherent power as a court of equity to authorize sales of the real estate

of infants in proper instances. *Marsh v. Dellinger,* 127 N.C. 360, 37 S.E. 494; *Rowland v. Thompson,* 73 N.C. 504; *Williams v. Harrington,* 33 N.C. 616, 53 Am. Dec. 421.

The judgment in the trial court is modified to conform to this opinion. As thus modified, it is affirmed.

Modified and affirmed.